THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD E. DILL, Defendant-Appellant.

(No. 12462;

Fourth District—November 14, 1974.

John F. McNichols and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul R. Welch, State's Attorney, of Bloomington (Kai A. Wallis, of Circuit Attorneys Project, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On March 12, 1973, defendant, Donald Dill, was convicted, pursuant to a guilty plea, of the offense of burglary and sentenced to 3 years' probation. On July 31, 1973, defendant's probation was revoked and defendant was sentenced to a 1-to-4-year term of imprisonment. Defendant

appeals from the sentence imposed and raises two issues for resolution by this court: (1) Whether the trial court abused its discretion in sentencing defendant to a term of imprisonment without affording defendant the opportunity to be sentenced under the provisions of the Illinois Dangerous Drug Abuse Act; and (2) Whether the trial court erred in sentencing defendant to a term of imprisonment upon probation revocation without ordering an up-to-date presentence report.

Two of the conditions of defendant's probation were as follows:

"L. He shall not gamble, use any drug or other substance prohibited by law, or use intoxicating liquor.

M. He shall not enter any place where the principal business is the sale of intoxicating liquor or any pool hall where intoxicating liquor is sold."

At defendant's probation revocation hearing James Bruehl and Glen Owscany, both salesclerks in a Bloomington, Illinois, liquor store, testified that, on June 23, 1973, they observed defendant emerge from a cab and "stagger" toward the liquor store. They testified that defendant was denied entrance into the store because it was thought that he had already had too much to drink. They then proceeded to describe the ensuing fracas that occurred when defendant tried to force his way into the store. The police were then called to the scene. Defendant testified that he had been drinking on the day in question and "I had two nembutals around 10:00 and then around 12:00 I had maybe three more." Defense counsel then inquired into defendant's past drug problems. Defendant stated that he was discharged from the army "more or less on the basis of drugs and so forth." He stated that prior to entering the army he had been involved with drugs, "mostly speed and downers." He stated, however, that while in the army his involvement with drugs increased:

"Defendant: Well, I jumped up from speed and downers and the like to heroin and opium and morphine, and LPM. They gave some gas masks, they had this nervous gas, that you just take a coke and you inject it into the coke and you drink it and it serves like a numbing thing * * *."

He further testified that after leaving the army in 1969 he went to live in California with a friend who "was mostly involved with heroin and I lost quite a bit of weight * * *." He stated that he knew he needed help with his drug problem so he went to a hospital in Danville, but he happened to know two people in the hospital and "drugs were easily attainable." He stated that at the present time he needs assistance for his drug problem and has been talking with the people at Project Lighthouse in Bloomington and Gateway House in Springfield, but due to his present court situation they would not accept him. He stated, however, that he

could be admitted to a 6-month veterans program in Indianapolis, Indiana. William White, the director of Project Lighthouse, a drug-rehabilitation program in Bloomington, testified that he has recently talked with defendant on five different occasions and stated:

> "I think probably my most initial impression, and again this is guarded, as we go through — I went through the alcohol and drug history with Don, and I had some of the same unsureness about how accurate all of the information was that I was getting when we discussed some other areas. The alcohol and drug history itself goes back to about roughly the age of twelve. At that point he went through some short periods of glue sniffing, which is not that uncommon at that age. But again, at about fourteen or fifteen he began experimenting with both drugs and alcohol quite heavily, and it seemed that as he moved towards the age of about twenty both the drug and alcohol usage increased considerably. In terms of type of drugs used, it would probably be easier to list the ones that he has not used. The majority of classification of drugs that he has used are amphetamines, barbiturates, hypnotics, a variety of kinds of psychedelics and opiates, including morphine, heroin and methadone."

He stated that he advised defendant to seek further psychiatric evaluation and certain residential programs. The State's Attorney then recommended to the court some type of closely supervised long-term drug-treatment program. The defense counsel then agreed with the State's recommendation regarding some type of closely supervised mandatory program. The judge then imposed a 1- to 4-year term of imprisonment stating to defendant that he believed he could benefit from some type of drug treatment program, that such information should be forwarded to the penitentiary authorities, and that perhaps he could be paroled into some type of drug program. Nevertheless, the court further stated that some type of imprisonment was necessary, and that he would not accept the recommendations of the State and defense counsel.

Section 2 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.1 *et seq.*) is entitled "Legislative Declaration" and provides:

> "It is the public policy of this State that the human suffering and social and economic loss caused by addiction to controlled substances and the use of cannabis are matters of grave concern to the people of the State. It is imperative that a comprehensive program be established and implemented through the facilities of the State, counties, municipalities, the Federal Government, and local and private agencies to prevent such addiction and abuse; to promote research on the effects and consequences of the abuse of con-

trolled substances and use of cannabis; to study the problem of the abuse of controlled substances and use of cannabis in this State and inform the public as to its findings; and to provide diagnosis, treatment, care and rehabilitation for controlled substance addicts to the end that these unfortunate individuals may be restored to good health and again become useful citizens in the community." (Ill. Rev. Stat. 1973, ch. 91½, par. 120.2.)

In this section of the statute the legislature has set forth, in clear terms, a firm, considered statement of public policy to be "* * * implemented through the facilities of the State * * *." Sections 8, 9 and 10 of the Act specifically detail the function of the trial court in the implementation of the public policy set forth in section 2.

We agree with the holding of *People v. Robinson,* 12 Ill.App.3d 291, 297 N.E.2d 621, insofar as it holds that the trial judge, when dealing with an individual convicted of a crime "has reason to believe" that the defendant is addicted, is required to exercise his discretion whether or not to invoke the Act. The record must demonstrate that the trial judge has, in fact, exercised that discretion. No formula is intended to be prescribed, but the record must, in some fashion, establish that the trial judge, in the exercise of his discretion, made a deliberate decision to impose sentence or other sanctions available to him under the Code of Corrections in lieu of invoking the provisions of the Dangerous Drug Abuse Act.

■■■ We do not agree that it is an abuse of discretion on the part of the trial judge to sentence a defendant to a term of imprisonment "without first giving him the opportunity to be sentenced under the provisions of the Illinois Dangerous Drug Abuse Act." The trial judge is under no duty to initiate inquiry as to whether or not a defendant is addicted; he is under no duty to invoke the procedural provisions of the act *in any case,* and a defendant is not "entitled" as a matter of law to be afforded treatment under the act, nor is he entitled to be afforded the opportunity to elect to be so treated. These matters are clearly within the discretion of the trial judge. It is equally clear, however, that where the trial judge knows the defendant to be addicted or "has reason to believe" that the defendant is addicted, he *is* required to exercise his discretion in determining whether or not to invoke the provisions of the Act either with or without the defendant's consent.

During the sentencing hearing in this case neither defendant's counsel, nor the State's Attorney, nor the trial judge made any reference to the Dangerous Drug Abuse Act. We are therefore unable to determine, from this record, whether or not the trial judge did exercise his discretion in connection with the Dangerous Drug Abuse Act.

■■   Accordingly, sentence is vacated and the cause is remanded to the trial judge for a new sentencing hearing in conformity with the views herein expressed.

Reversed and remanded.

SMITH, P. J., and CRAVEN, J., concur.