The People of the State of Illinois, Plaintiff-Appellee, *v.* Jackie Reed McLean, Defendant-Appellant.

(No. 75-273; ▮▮▮▮▮▮▮

Fifth District—November 25, 1975.

Jackie Reed McLean, *pro se.*

Robert E. Murphy, State's Attorney, of Waterloo (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Defendant, Jackie Reed McLean, entered a negotiated plea of guilty to a charge of burglary and received the recommended sentence of three to nine years in the penitentiary. From his conviction and sentence he brings this appeal and raises three issues: (1) whether the trial court

failed to substantially comply with Supreme Court Rule 402(a)(2) in not advising the defendant of the mandatory parole term accompanying the sentence, (2) whether the plea of guilty was knowingly and intelligently made in the absence of admonishment of the mandatory parole term; and (3) whether the trial court abused its discretion in not sentencing the defendant under the Dangerous Drug Abuse Act (Ill. Rev. Stat., ch. 91½, § 120.1 *et seq.*).

Concerning the first two issues raised by the defendant, our review of the record shows that before accepting defendant's guilty plea and imposing sentence the trial judge gave several admonishments to the defendant including the following:

> "By the Court: Now the possible penalty for this offense is a minimum of one year in the Illinois State Penitentiary, and the maximum can be twenty years. You can also be fined up to $10,000 *and given a three year parole.* This is a Class 2 Felony under the laws of the State of Illinois. Understand that?
>
> Defendant McLean: Yes." (Emphasis added.)

It is thus clear that the defendant was advised of the possibility of a parole term, although the trial judge did not state that the parole term would mandatorily attach to a penitentiary sentence.

■■ As to the first issue raised by the defendant, even had the trial judge made no mention of a parole term, there would be no reversible error. That issue was decided adversely to the defendant by the Illinois Supreme Court in its supplemental opinion upon denial of petition for rehearing in *People v. Wills*, 61 Ill.2d 105, 330 N.E.2d 505, wherein the court held that the requirement under Rule 402(a)(2) of the admonition concerning the mandatory parole applies prospectively to guilty pleas taken after May 19, 1975. Defendant entered his plea of guilty and was sentenced on April 21, 1975.

■■ As to the second issue raised by the defendant, we have examined the record and found that the plea of guilty was understandingly and voluntarily made. The Supreme Court in *Wills* stated that a lack of admonition of the mandatory parole period is only one factor to be considered in determining whether a guilty plea was voluntarily and intelligently made. In this case the defendant was adequately advised of all of the rights he was waiving by pleading guilty and of the possible penalties to which he was subjecting himself, including a parole term of three years. Although the trial judge did not specifically state that the parole term would be mandatory, we do not feel this factor alone requires a finding that the plea was not intelligently or understandingly made.

In order to discuss the third issue raised by defendant, we need to

review the proceedings which occurred prior to the April 21, 1975, proceeding in which defendant entered the negotiated plea of guilty which is the subject of the instant appeal. On January 31, 1975, defendant appeared with counsel and stated that he wished to enter a plea of guilty to the burglary charge. The parties advised the trial judge that there had been no negotiations for the plea. The judge then advised the defendant that the determination of sentence would be for the judge to decide, within the limits prescribed by statute. The State's Attorney stated that the factual basis for the plea was that the defendant had been found in a doctor's office which he had broken into. In addition the defendant stated that his purpose in breaking into the office was to take drugs and money. After determining that the plea was knowing and voluntary and that a factual basis existed, the trial judge accepted the plea. He then ordered a presentence investigation and report and set March 3, 1975, for the sentence hearing.

The presentence report disclosed, among other things, that the defendant had a history of heroin addiction and that in December of 1973 he had voluntarily entered a drug treatment program at the Jefferson Barracks Veterans Hospital. As a consequence, he was institutionalized for the better part of 1974 and, until his incarceration for the instant offense, was under methadone maintenance. The presentence report also stated that the defendant had two prior burglary convictions and that his parole on the sentence for the second conviction was revoked for suspected use of narcotics. Finally, the report stated that the defendant also had a prior conviction for possession of a narcotic drug.

On March 3, 1975, the defendant appeared with counsel for the sentence hearing. At the beginning of the proceeding the judge asked the parties whether they had considered requesting disposition under the Dangerous Drug Abuse Act (Ill. Rev. Stat., ch. 91½, § 120.1 et seq.). When both the State's Attorney and defense counsel stated that they had no objection to straight sentencing, the judge ordered a recess so that the attorneys could read *People v. Dill*, 23 Ill.App.3d 503, 319 N.E. 2d 240. Following the recess, defense counsel made a motion for disposition of the case under the Dangerous Drug Abuse Act, and the judge then heard the arguments of both sides on this motion. Immediately thereafter the judge stated that, after considering the defendant's medical history and previous incarcerations and the holding of *Dill*, he was exercising his discretion to deny the motion.

The judge then requested arguments from both sides regarding sentencing under the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, § 1001—1—1 et seq.). The State's Attorney recommended a term of imprisonment of three to nine years, and defense counsel recommended

a term of imprisonment of one to three years. The judge then sentenced the defendant to a term of imprisonment of six to eighteen years, stating that the sentences recommended by defense counsel and by the State's Attorney were inconsistent with the penalty that should be imposed. The defendant immediately thereafter stated that it was his understanding that he would receive a sentence of three to nine years and, therefor, he wished to withdraw his plea and have a trial. The court then allowed the defendant to withdraw his plea, although both defense counsel and the State's Attorney reiterated that there had been no plea negotiations.

On April 21, 1975, the defendant, with counsel, appeared before a different judge. At the outset of the proceeding the State's Attorney described the circumstances under which the defendant previously had pled guilty and thereafter withdrawn his plea. The State's Attorney stated that the Dangerous Drug Abuse Act and the Case of *People v. Dill* had been considered by the parties and the court at the previous proceeding. Finally, the State's Attorney stated that the parties had now entered negotiations whereby the defendant would plead guilty in exchange for the State's recommendation of a sentence of three to nine years. Defense counsel then stated that he wholly agreed with the statement of the State's Attorney. Thereafter the court expressed its concurrence in the negotiations which had taken place and told the defendant that he would receive the three to nine year sentence if he pled guilty. The defendant expressed his understanding of this.

Before accepting the defendant's plea of guilty the court advised the defendant of his various rights and determined that a factual basis for the plea existed. The court also indicated his awareness of the presentence report which had been prepared. The following colloquy then took place:

"BY THE COURT: Is there anything else to come before the Court at this time, anybody else have anything they wish to say?

STATE'S ATTORNEY: Perhaps we should specifically make a finding this defendant should be sentenced under Criminal Code rather than the Dangerous Drug Abuse Act, in light of People v. Dill.

BY THE COURT: He is charged with burglary, and you don't wish to proceed under Dangerous Drug Abuse Act, you wish to proceed under the Criminal Code?

STATE'S ATTORNEY: Yes.

BY THE COURT: That is what we are proceeding under and the sentence would be under the Criminal Code of Corrections. Is there anything else you wish to call to the Court's attention?

DEFENSE COUNSEL: Nothing further."

The court then accepted the defendant's plea; however, before the court imposed sentence the following colloquy occurred:

"BY THE COURT: * * * and if there is nothing further, I will go ahead with the sentence. Anybody have anything to say with respect to this? Mr. McLean, you have been in the penitentiary before?

DEFENDANT McLEAN: Yes.

BY THE COURT: You understand fully what is facing you I suppose?

DEFENDANT McLEAN: Yes.

BY THE COURT: You been in the Illinois Penitentiary before?

DEFENDANT McLEAN: Yes sir.

BY THE COURT: And you have been tried I assume in Court, or pled guilty, so you have been through this process before, and you do understand what we are doing here fully today?

DEFENDANT McLEAN: Yes sir."

Numerous cases which have come before the Illinois appellate courts have dealt with the Dangerous Drug Abuse Act. Most of these cases have dealt with the recurring issue of whether the trial court had reason to know that the defendant was an addict. In some of these cases the appellate court has found that the trial court did have reason to believe the defendant to be an addict and therefore abused its discretion by either failing to inquire further into the defendant's addictive state or by failing to give any consideration to the possibility of applying the Dangerous Drug Abuse Act. (See *People v. Robinson*, 12 Ill.App.3d 291, 297 N.E.2d 621; *People v. Elsner*, 27 Ill.App.3d 957, 327 N.E.2d 592; *People v. Stickler*, 31 Ill.App.3d 977, 334 N.E.2d 475; *People v. Newlin*, 31 Ill.App.3d 735, 334 N.E.2d 349. In other similar cases the appellate court has found no abuse of discretion because the trial court had no reason to believe the defendant to be an addict. (See *People v. Williams*, 4 Ill.App.3d 362, 280 N.E.2d 798; *People v. White*, 10 Ill.App.3d 566, 294 N.E.2d 699 (abstract opinion); *People v. Belleville*, 20 Ill.App.3d 1088, 314 N.E.2d 35; *People v. Edwards*, 29 Ill.App.3d 625, 331 N.E.2d 342.) In another case (*People v. Clinkscale*, 14 Ill.App.3d 226, 302 N.E.2d 181) the appellate court found an abuse of discretion in that the trial court, in considering the possibility of applying the Act, improperly interpreted the provisions of the Act.

Additionally, several of these cases have recognized that although the trial court is required to exercise its discretion in determining whether or not to invoke the Act whenever it has reason to believe the defendant is an addict, the court, nevertheless, is under no duty to invoke the

procedural provisions of the Act in any case. See *People v. Dill; People v. White; People v. Edwards.*

■■ It is clear that the trial judge at the proceeding of April 21, 1975, during which defendant pled guilty had been alerted to defendant's addiction by the contents of the presentence report and by the circumstances of the instant offense. It is also clear that the judge was aware of the possibility of disposing of the case under the Dangerous Drug Abuse Act. Thus we are not faced with the issue of whether the trial court abused its discretion by failing to inquire further about the defendant's addictive state; nor are we faced with the issue of whether the trial court abused its discretion by completely failing to be aware of the applicability of the Dangerous Drug Abuse Act. The issue here is whether the trial court, being aware of defendant's addiction and of the Dangerous Drug Abuse Act, gave adequate consideration to the applicability of the Act. Under the circumstances of this case we think that he did.

To begin with, the court was faced with a plea of guilty pursuant to negotiations the terms of which called for a recommendation of three to nine years sentence in exchange for the plea. The court had already expressed its concurrence to the agreement. Moreover, the court was aware from the statement of the State's Attorney that the plea agreement had come about subsequent to defendant's withdrawal of his prior, unnegotiated guilty plea for which the previous judge after considering the State's recommendation of a three- to nine-year sentence and after considering the applicability of the Dangerous Drug Abuse Act, had imposed a sentence of six to eighteen years.

As indicated in those portions of the record of the April 21, 1975, proceeding set out above, the trial judge gave the State's Attorney, the defendant, and defense counsel an opportunity to comment with respect to the sentencing of the defendant. The State's Attorney indicated that the parties wished to proceed under the Code of Corrections rather than under the Dangerous Drug Abuse Act. Defense counsel then and the defendant later indicated that they had nothing further to say with respect to the matter, thus demonstrating their satisfaction with the "straight sentencing."

Although the trial judge might have invoked the provisions of the Act on his own after accepting the defendant's plea of guilty (Ill. Rev. Stat., ch. 91½, § 120.10), he was not required to do so (*People v. Dill; People v. White; People v. Edwards*), and we find no abuse of discretion in his failing to do so. Therefore, the judgment of the trial court is affirmed.

Affirmed.

KARNS and EBERSPACHER, JJ., concur.