THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY YORK, Defendant-Appellant.

Third District   No. 79-795

Opinion filed August 29, 1980.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (John X. Breslin, Martin N. Ashley, and Gillum Ferguson, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

In this appeal by the defendant, Gary York, which he filed following the revocation of the probation previously imposed after he pleaded guilty to the unlawful delivery of a substance purported to be a controlled substance, three issues are raised concerning the propriety of the sentencing hearing and the sentence itself. Upon revocation, the defendant was sentenced to the maximum term of imprisonment of not less than 3 1/3 years nor more than 10 years. The issues raised by the defendant are: (1) Whether the trial court erred by failing to consider drug treatment as an alternative to sentencing; (2) whether the failure of the trial court to specify the reasons for the sentencing determination denied the defendant his statutory right to a proper sentencing hearing; and (3) whether the sentence imposed is excessive and should be reduced.

In establishing the factual basis for the defendant's original guilty plea, the prosecutor stated that Bobby Friga would testify he was a police officer assigned to the Multi-County Narcotics Enforcement Group and was so employed in an undercover capacity on October 28, 1977. Friga's employment involved the attempted purchase of drugs and marijuana, and it was in this role that he came into contact with the defendant. On the date in question Friga approached the defendant and asked him if he could get him some mescaline. The defendant indicated he could and told Friga to wait. The defendant left, and shortly thereafter, returned with two small bags containing the purported mescaline. Friga then paid the defendant $20. A subsequent chemical evaluation, however, made by Susan H. Johns of the Illinois Department of Law Enforcement Bureau of

Scientific Services Laboratory in Pekin, disclosed that the substance weighed 2.9 grams but contained no controlled substance.

The basis for the petition to revoke the defendant's two-year probation was that he knowingly and unlawfully delivered to George Pinkney, an undercover agent, more than 10 grams, but less than 30 grams, of a substance containing cannabis. Both Pinkney and his confidential source, John Spoede, testified that the defendant was given $35 and asked if he could secure some cannabis. The defendant left the car in which they had been travelling and, a short time later, returned to place a bag of cannabis on the console. It was stipulated that a test by a forensic scientist would establish that the material in the bag was 22.3 grams of a substance containing cannabis.

Taking the stand in his own behalf, the defendant testified that Spoede gave him $35 in order to purchase some cannabis. At first the defendant declined, stating that he was then on probation and, in any event, the town was "dry." The defendant nevertheless got into a car with Spoede and another man and attempted to secure some cannabis at two separate locations, but was unsuccessful at each. Thereafter, the defendant returned the money to Spoede without any cannabis. Nevertheless, the trial court found that the defendant had violated his probation.

A presentence report was ordered and prepared. The report indicated the defendant was 22 years old, had no prior juvenile or adult record and, while serving his term of probation, had a good reporting history. Numerous references were also made regarding defendant's long history of drug use and addiction, which at one time resulted in his being discharged from the United States Navy. On the other hand, the defendant's mother informed the presentence investigator that the defendant used drugs in the service to obtain a discharge. She also stated that he tends to exaggerate and that his conversations are questionable at times.

Concerning psychological examinations given to the defendant, Robert Wilderman, Ph. D., director of clinical services at the Tazwood Center for Human Services, directed a letter dated July 26, 1979, to the presentence investigator in which he stated, in part:

> *Results*
> The validity of these results is questionable, as it seems likely that Mr. York did not approach the test sincerely. The degree of psychopathology indicated by his test scores is so high that it is suggestive of someone trying to fake bad so as to get into treatment. Therefore, this report should be viewed cautiously, and decisions about Mr. York should be made in light of other information known about him.
>
>         * * *
>
> *Conclusion*
> In light of Mr. York's apparent attempt to manipulate the situation

in order to appear in need of treatment, the results of this report need verification from other more reliable sources."

On July 19, 1979, another letter was sent to the presentence investigator from David W. Mingus, the program director of Youth Outreach. In part, Mr. Mingus stated:

"On Monday, July 16, 1979, an evaluation in reference to Mr. Gary Yorks drug use and knowledge was conducted at the Tazewell County Jail. Mr. York has been an inmate of the Jail for approximately one month and showed no apparent indications of any withdrawal symptoms. Mr. York expressed he had no significant withdrawal at any time during this stay and attributed his condition to his primary abusing Hallucinogens drugs prior to being incarcerated.

Mr. York expressed he has had prior treatment for the addiction to opiate drugs while in the Navy, however, was not co-operative to the treatment modility. There are apparent indications Mr. York has had an extensive drug abuse pattern since early adolescent years to date. There is a definite street knowledge of drugs and their effects, however, at times certain aspects of this interview suggest exaggeration in reference to the extensity of use and knowledge.

Mr. York is very willing and eager to become involved in treatment for substance abuse at the current time. Despite his eagerness towards treatment there are manipulative undertones to his desires."

While in the Navy the defendant had been placed in a drug rehabilitation center for four months before being released because of his inability to cooperate. He was later discharged due to inservice use of narcotics and cannabis.

On the narcotics and dangerous drugs questionnaire, the defendant indicated that he used marijuana, cocaine, morphine, heroin, speed, THC, LSD, PCP, peyote, mescaline, opium, black beauties, dexies, bennies, pep pills, rainbows, blue heavens, red devils, yellow jackets, and sniffed glue. Some of those the defendant indicated he used daily. The remaining questions were all answered in such a way as to indicate drug abuse. Yet, the systems coordinator of defendant's place of employment since June 11, 1977, indicated the defendant did not evidence any drug use or excessive drinking.

The defendant's answers to the Michigan Alcoholism Screening Test were answered in such a way as to promote the impression of alcohol abuse. This can be seen from a comparison of the defendant's score of 34 points to standards: 3 points or less shows a social drinker; 4 points demonstrates a presumptive problem drinker; and 5 points is indicative of an alcoholic or problem drinker.

Based on this information, the presentence investigator concluded that the defendant had a bad attitude toward probation and was not a fit candidate for probation. At the sentencing hearing held on August 17, 1979, the trial court agreed, but made no mention of the availability to the defendant of treatment pursuant to the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.1 *et seq.*).

■■ ■ Persons convicted of a crime may, in the discretion of the trial court, be given the opportunity to elect to be treated by the Department of Mental Health and Developmental Disabilities in lieu of being sentenced to probation if the trial court has reason to believe the defendant is an addict or he states he is an addict and he meets the eligibility requirements. (Ill. Rev. Stat. 1979, ch. 91½, par. 120—10.) In exercising the discretion to deny a defendant the option of electing treatment, the record must reflect that the trial judge exercised that discretion and neither abused it nor acted arbitrarily (*People v. Warren* (1977), 69 Ill. 2d 620, 373 N.E.2d 10), and apparently, the trial court has a duty to consider this alternative to the usual sentencing procedure if the defendant is eligible even if the offense for which the defendant stands convicted is not probationable. (*People v. Teschner* (1980), 81 Ill. 2d 187, 407 N.E.2d 49.) Nor need a defendant show himself to be qualified for probation before a trial court is required to determine whether the option of treatment should be extended to a convicted defendant. *People v. Robinson* (1973), 12 Ill. App. 3d 291, 297 N.E.2d 621.

■■ Where the defendant argues that the trial court should have, at least, mentioned the reasons for not allowing the election, the State counters by attempting to point out the defendant's lack of eligibility. First, the State argues, the defendant was not an addict, as is evidenced by his "phony" answers to the questionnaires, his manipulative attitude, and the fact that his employer found no evidence of drug or alcohol abuse in his performance. However, if this is the basis for the trial court's decision, that reason should have been stated for the record as evidence that the trial court exercised its discretion.

The State's second contention is more persuasive. The defendant, the State points out, is not eligible to make the election because his probation officer did not consent to treatment under the act. (Ill. Rev. Stat. 1979, ch. 91½, par. 120—8(e).) The courts of Illinois have ruled that the failure to obtain the consent of a probation or parole officer denies the defendant the election when the defendant attempts to elect treatment in lieu of prosecution (*People v. Phillips* (1977), 66 Ill. 2d 412, 362 N.E.2d 1037), where the defendant was on parole or probation for another offense at the time of the conviction for which he was being sentenced (*People v. Young* (1977), 56 Ill. App. 3d 106, 371 N.E.2d 646; *People v. Morgan* (1977), 50 Ill. App. 3d 962, 365 N.E.2d 1362), or in the event the defendant is being

sentenced following a probation revocation. *People v. Norris* (1976), 42 Ill. App. 3d 301, 355 N.E.2d 696.

On the other hand, from merely a surface examination of the cases, there would seem to be a conflict in the case law, which the defendant would have us resolve in his favor. We find, however, those cases which might be construed in the defendant's favor to be distinguishable.

In *People v. Anderson* (1977), 48 Ill. App. 3d 891, 393 N.E.2d 449, the defendant was charged with burglary and criminal damage to property, but because the defendant's probation officer did not consent to treatment, the trial court denied the requested election for treatment in lieu of prosecution. However, the trial court felt bound by the probation officer's refusal after conviction and did not consider anew the possibility of drug treatment at the sentencing hearing. The failure to reconsider drug treatment at the sentencing hearing was held to be error.

The appellate court, in remanding for a new sentencing hearing, relied on *Phillips*. In *Phillips*, the Illinois Supreme Court points out that the court may be bound by the probation officer's denial of consent to treatment under the Dangerous Drug Abuse Act in lieu of prosecution, but the court is not barred by a lack of consent by the probation officer from considering imposing drug treatment as a condition to probation pursuant to the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—3(b)(4)). Because of the reliance on *Phillips, Anderson* may be referring to drug treatment as a condition of, and not as a substitute for, probation. *Anderson* would then have no application here. Although the opinion in *Anderson* is unclear as to which authorization for drug treatment it refers, we believe *Anderson* ought to be construed so as to be consistent with *Phillips, Morgan* and *Young*.

Two other cases are factually closer to the case at bar, but are, nevertheless, distinguishable. In *People v. Elsner* (1975), 27 Ill. App. 3d 957, 327 N.E.2d 592, and in *People v. Dill* (1974), 23 Ill. App. 3d 503, 319 N.E.2d 240, a defendant's probation was revoked and he was thereafter sentenced to imprisonment. In each case, the case was remanded for a new sentencing hearing because the record failed to demonstrate that the trial judge exercised his discretion in denying to the defendant the election to treatment under the Dangerous Drug Abuse Act. But in neither case was any question of the defendant's failure to secure the consent of his probation officer commented about. We must conclude, therefore, that the question was not raised, and as a result, *Elsner* and *Dill* are of little value in deciding the case at bar.

The final case to be considered in this regard is *People v. Simms* (1978), 60 Ill. App. 3d 519, 377 N.E.2d 154. *Simms* suggests that the *Morgan* and *Young* opinions are incorrectly reasoned because *Phillips*, upon which *Morgan* and *Young* rely, is restricted to the situation in which

a defendant on probation elects treatment in lieu of prosecution and has not yet been convicted, and because to allow a probation or parole officer any authority with respect to sentencing after a defendant has been convicted is an unconstitutional delegation of the judicial power to impose a sentence.

Although the factual situation in *Phillips* is one in which a defendant who is on probation for another offense attempts to elect treatment in lieu of prosecution, we see no reason to conclude that the Illinois Supreme Court's reasoning can not be extended beyond that situation. Nowhere in its opinion does the Illinois Supreme Court restrict the application of *Phillips*. Furthermore, the Illinois Supreme Court specifically refers to the trial court giving consideration of drug treatment after conviction. But instead of referring to it in regard to the Dangerous Drug Abuse Act, the court states that, in spite of the lack of consent from the probation officer, the trial court can, when imposing sentence, consider drug treatment as a condition to probation pursuant to the Unified Code of Corrections. It can be inferred, therefrom, that the failure to secure consent from the probation officer bars completely, any consideration of treatment under the Dangerous Drug Abuse Act.

As for the improper delegation of sentencing authority, the Illinois Supreme Court has stated in both *Phillips* and *Teschner* that the election to treatment under the Dangerous Drug Abuse Act is not a sentence, but is an alternative to the sentencing procedure. Since the election is not a sentence, the probation or parole officer can not have been unconstitutionally delegated any judicial sentencing power. This is, after all, the conclusion in *Phillips*. Therefore, it appears that *Simms,* not *Morgan* or *Young,* may have been incorrectly reasoned. This reasoning also applies to *Anderson* if, because probation was not there imposed, the reader concludes that the court in *Anderson* must have been concerned with treatment under the Dangerous Drug Abuse Act.

■■ Because the defendant's probation officer has not consented to his treatment under the Dangerous Drug Abuse Act, we find the defendant to be ineligible for such treatment and, therefore, decline to remand this cause for a new sentencing hearing merely to enable the sentencing judge to state, for the record, his reasons for denying the defendant the election for such treatment. As for the second issue raised by the defendant, we note in the defendant's reply brief that the issue has been withdrawn.

Defendant's reply brief also alters our consideration of the third issue somewhat. While continuing to argue that the sentence imposed was excessive and should be reduced, the defendant concedes that the appropriate standard upon which to base the review of this sentence is whether the trial court abused its discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882) since the defendant, at the first sentencing hearing, elected to be sentenced pursuant to the statutory sentencing

scheme in effect at the time of the offense, which was prior to the effective date of the new sentencing act.

■■ When a reviewing court is asked to exercise its power to reduce a sentence, that power will be exercised cautiously (*People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344), and the reduction will not be had merely out of judicial clemency (*People v. Aristole* (1971), 131 Ill. App. 2d 175, 268 N.E.2d 227). The offense for which the defendant was sentenced is a Class 3 felony (Ill. Rev. Stat. 1979, ch. 56½, par. 1404). Under the applicable sentencing provisions, the maximum term for a Class 3 felony is a term in excess of one year but not exceeding 10 years. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(b)(4).) The minimum term must be set at one year, "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term," but the minimum can not exceed one-third of the maximum term set in that case. Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)(4).

After reviewing the facts in this case, we can not say that the trial court abused its sentencing discretion. For the foregoing reasons, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.