THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY LAND, Defendant-Appellant.

First District (5th Division)   No. 86—0039

Opinion filed December 23, 1988.—Rehearing denied January 18, 1989.

252

Randolph Stone, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant, Anthony Land, was charged with rape (Ill. Rev. Stat. 1981, ch. 38, par. 11–1(a) (repealed by Pub. Act 83–1067, §28, eff. July 1, 1984)) and because he was 16 years old at the time of the offense, he was prosecuted as an adult pursuant to section 2–7(6)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702–7(6)(a) (now Ill. Rev. Stat. 1987, ch. 37, par. 805–4(6)(a))). Following a jury trial, he was found guilty of attempted rape (Ill. Rev. Stat. 1981, ch. 38, par. 8–4) and sentenced to 10 years' imprisonment. On appeal, we address the following seven issues: (1) whether defendant's failure to obtain a ruling on his motion for a new trial adversely affects his appeal; (2) whether his motion to suppress statements was denied in error because the State did not call a material witness; (3) whether the mother's testimony of the complainant's statements concerning the attack should not have been admitted in evidence; (4) whether the expert's testimony invaded the jury's exclusive fact finding province; (5) whether the State's alleged improper comment in closing argument denied defendant a fair trial; (6) whether the trial court erred when it gave the jury a non-pattern jury instruction and a general not guilty verdict form; and (7) whether defendant was erroneously sentenced as an adult. We affirm.

The evidence at trial established the following facts.

On January 29, 1984, at approximately 10:30 p.m., the mother of the complainant left her five children with her downstairs neighbor, Ms. Rebecca Land, defendant's aunt, while the mother went out for the evening. At approximately 1 a.m., the mother returned to Ms. Land's apartment and each of her children was sleeping. She woke up her children and brought them upstairs to her apartment and put them back to sleep. The mother went back downstairs to Ms. Land's apartment for a few minutes. When she returned upstairs again, she heard her four-year-old daughter, the complainant, crying in her bed. At trial, the mother testified, over defendant's objection, that she went to the complainant, who said, speaking quickly and loudly, "Anthony [the defendant] hurt, he stuck his thing in my thing down there, put it in my boody [sic]." The complainant pointed to her vaginal area when she made the statement. The mother examined the complainant's vaginal area and found it was red and swollen.

The mother took the complainant to the hospital where she was examined by Dr. Barbara Robinson. At trial, over defendant's objection, the doctor testified, "My diagnosis was that the [complainant] had the described erythema, hyperemia, and tenderness which were consistent with the alleged sexual abuse." The parties stipulated that specimens taken from complainant tested negative for the presence of spermatozoa or semen.

Detectives William Wendt and James Cornelison were called to the hospital to begin their investigation. They spoke with defendant, who was brought to the hospital by his aunt, Ms. Land, and he denied assaulting the complainant. At that time, defendant was 16 years old.

The detectives took defendant to the police station, where he told the detectives he came home that evening, to his aunt's apartment, at approximately 11:30 p.m., and saw the complainant sleeping in the bedroom. Defendant said he pulled down his pants, laid on top of the complainant, and inserted his "thing" into her. After he "came," complainant started to cry and he left the room.

Subsequently, Assistant State's Attorney Stephen Botti interviewed defendant in the presence of Detective Cornelison. Defendant signed a written statement that Botti prepared, which read as follows:

"While everyone was asleep in the house I went to the bed [complainant] was sleeping in. I got on top of [her] and put my penis into her vagina. I had an orgasm. [She] woke up right after my orgasm and started to cry. I left the room and [she] stayed in bed crying. I knew that [she] was 4 years old."

Prior to trial, defendant moved to suppress his oral and written

statements on the basis that they were made involuntarily. Botti, the assistant State's Attorney who prepared the written statement, did not testify at the hearing, and defendant did not raise an objection to his absence. Defendant's motion to suppress was denied. At trial, the jury heard testimony from Detectives Wendt and Cornelison as to the substance of defendant's oral and written statements.

The complainant did not testify at trial, and the court did not conduct a hearing to determine whether she was a competent witness.

At the close of the State's case, defendant moved for a directed verdict which was denied. The defense then rested without presenting evidence.

In closing argument, defendant emphasized the fact that the complainant did not testify and stated:

"If she made the statements to all those people, the police, her mother, whatever, why can't she tell you about it?"

In rebuttal, the State explained the absence of the complainant in the following manner, without objection from the defendant:

"This girl [was] four when it happened. You saw her, she is six now, she is still too young to come in here and tell [you what] happened. We can't wait til she is 21 to tell you about it, we just can't do that.

\* \* \*

We cannot present her testimony because she cannot testify in a court of law and it is only because of her age. If you believe for a second that she'd come in here and tell you a different story about what happened? [sic] That is what counsel is asking you to believe."

In the jury instruction conference, defendant objected to the tendering of only three verdict forms: guilty of rape, guilty of attempted rape, and a general not guilty. Defendant argued that the court should tender not guilty of attempted rape and not guilty of rape verdict forms instead of a general not guilty verdict form. The court overruled the objection, finding that the jury would be confused with four verdict forms.

The jury found defendant guilty of attempted rape, and on October 31, 1985, defendant filed his motion for a new trial. The entry on the half sheet for October 31, 1985, reads, "M/d new tri. Den.," which apparently means "motion/defendant new trial. Denied." The transcript of proceedings, however, established that there was no argument or ruling on the motion on October 31 and that defendant continued the hearing to November 27. The transcripts of subsequent court hearings on November 27, December 6, and December 9, also

establish that there was no argument or ruling on defendant's motion on any of those dates. On December 9, the transcript reveals that defendant's counsel told the trial court the motion was argued and denied. From the half sheet, the court read, "October 31st, motion for new trial is denied." The court then proceeded with a hearing in aggravation and mitigation and sentenced defendant to 10 years' imprisonment. Defendant filed a timely notice of appeal.

OPINION

I

■■ The first issue, not raised by either party, is whether defendant's failure to obtain a ruling on his motion for new trial adversely affects the issues raised on appeal. In supplemental briefs addressing this issue, defendant argues it is in his best interest for the court to hear the appeal and the State argues that the trial court ruled on the motion, overlooking the discrepancy between the transcript and the half sheet. The State relies on *People v. Maquet* (1983), 113 Ill. App. 3d 109, 446 N.E.2d 929, for the proposition that when a docket entry is not contradicted by any other portion of the record, it will be presumed that the trial court acted accordingly. *Maquet* is inapplicable to the present case because the transcript of proceedings clearly contradicts the docket entry, and therefore, we will not presume that the trial court ruled on the motion.

Our own research indicates that the failure to obtain a ruling on a motion for new trial waives the issues raised for appellate review. (See *People v. Hornaday* (1948), 400 Ill. 361, 81 N.E.2d 168.) Additionally, an objection made at trial is not sufficient to preserve issues for review; if the issues were not raised in a post-trial motion, they are waived. (*People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207.) Plain error is a limited exception to the waiver rule and will only be invoked when a substantial error deprived defendant of a fair trial. (*People v. Szabo* (1986), 113 Ill. 2d 83, 497 N.E.2d 995.) Consequently, the issues defendant raises on appeal, whether or not he objected at trial, can only be reviewed as to whether they amount to plain error. 107 Ill. 2d R. 615(a).

II

■ Defendant argues his motion to suppress oral and written statements was denied in error because the State did not call Assistant State's Attorney Botti, who prepared the written statement, to testify at the hearing. Although defendant contends Botti was a mate-

rial witness, he did not object to Botti's absence at the hearing and, as a result, the issue is waived. Ill. Rev. Stat. 1983, ch. 38, par. 114—11(d); *People v. Clay* (1981), 98 Ill. App. 3d 534, 424 N.E.2d 814.

Detective Wendt, who was a witness to the oral statements, and Detective Cornelison, who was a witness to the oral and written statements, testified at the hearing on the motion. The oral statement was made prior to the written statement and they were substantially the same. The evidence presented at the motion to suppress hearing supports the trial court's finding that the statements were made voluntarily. Accordingly, the failure to present Botti at the suppression hearing was not plain error.

### III

■ Defendant next argues that the mother's testimony concerning complainant's statement after the assault should not have been admitted in evidence because it was neither a corroborative complaint (Ill. Rev. Stat. 1983, ch. 38, par. 115—10) nor a spontaneous declaration (*People v. Young* (1980), 89 Ill. App. 3d 333, 412 N.E.2d 167). We agree that the mother's testimony was not a corroborative complaint because the complainant did not testify at trial. *People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132.

The three factors to consider in determining whether a statement is admissible as a spontaneous declaration are set forth in *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 514 N.E.2d 572. The factors apply in the present case as follows. First, the complainant's statement, her physical injuries, and defendant's statements establish that she was sexually abused, which was a startling event. (*People v. Merideth* (1987), 152 Ill. App. 3d 304, 503 N.E.2d 1132.) Second, less than two hours elapsed from the time of the abuse until complainant made the statement, and during part of that time, she was asleep. Thus, there was an absence of time to fabricate. (*People v. Watson* (1982), 107 Ill. App. 3d 691, 438 N.E.2d 453.) Third, complainant's statement and accompanying physical gestures establish the statement related to the abuse. We find that the evidence of the complainant's statement through her mother's testimony was properly admitted as a spontaneous declaration.

### IV

■ Defendant argues the jury's exclusive fact-finding province was invaded when Dr. Robinson testified that the complainant's injuries "were consistent with the alleged sexual abuse."

Defendant relies on *People v. Schultz* (1913), 260 Ill. 35, 102 N.E.

1045, where the supreme court found it was improper for a doctor to testify that in his opinion the victim's physical condition was the result of a "rape." *Schultz* is distinguishable because, here, the doctor did not testify that the complainant's injuries were the result of rape, but rather she testified they "were consistent with the alleged sexual abuse." Unlike *Schultz*, the doctor in the present case did not make a conclusion that a rape had occurred. Also, the doctor used the word "alleged," indicating that sexual abuse was not proven, which clearly did not invade the jury's fact-finding province. The testimony was proper because the doctor only testified as to what she personally observed, the complainant's physical condition, and did not make a conclusion as to whether the injuries were caused by rape. See *People v. Hill* (1965), 60 Ill. App. 2d 239, 208 N.E.2d 662.

■ Defendant argues further that the State's reference to the doctor's testimony in closing argument was improper. The State paraphrased the doctor's testimony and stated, "In other words, she was raped." We find the State's reference to the testimony was legitimate argument based on the evidence. See *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

## V

■ Defendant next argues that the State's alleged improper comments during closing argument denied him a fair trial. The comments, which were cited previously in this opinion, referred to complainant's absence as a testifying witness. Defendant waived this claim of error because he did not object to the comments at the time they were made. See *People v. Lyles* (1985), 106 Ill. 2d 373, 478 N.E.2d 291.

In rebuttal, the State may make comments that are invited by defendant's closing argument. (*People v. Morando* (1988), 169 Ill. App. 3d 716, 523 N.E.2d 1061.) The State's rebuttal argument was clearly invited by defense counsel's closing argument when he stated, "[W]hy can't she tell you about it?" Therefore, the comments were not improper.

## VI

■ Defendant argues the trial court erred when it gave the jury only three verdict forms: guilty of rape, guilty of attempted rape, and a general not guilty. In the jury instruction conference, defendant requested a not guilty and guilty verdict form for both rape and attempted rape but did not tender to the court alternative verdict forms. On appeal, defendant raises for the first time the question of whether the trial court erred when it tendered an instruction that did

not conform to Illinois Pattern Jury Instructions, Criminal, No. 26.01 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 26.01). IPI Criminal 2d No. 26.01 requires that the jury receive both a not guilty and a guilty form of verdict for each offense charged, including lesser included offenses.

Generally, a party may not raise on appeal the failure to give an instruction unless he tendered it to the trial court. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) Additionally, it is within the trial court's discretion to tender a non-pattern jury instruction. (*People v. Santiago* (1987), 161 Ill. App. 3d 634, 515 N.E.2d 228.) The failure to tender a not guilty verdict form for each offense charged does not constitute a substantial defect that deprives a defendant of a fair trial. See *People v. Smith* (1988), 165 Ill. App. 3d 603, 518 N.E.2d 1382.

In the present case, defendant did not tender to the court alternative jury instructions. The court, in its discretion, gave the jury a non-pattern instruction. The jury instruction in question and the verdict forms themselves establish that the jury could find defendant not guilty of either rape or attempted rape by using the general not guilty form. Therefore, the failure to tender a not guilty form of verdict for both offenses, in accordance with IPI Criminal 2d No. 26.01, did not amount to plain error.

## VII

■■ ■ Defendant argues the trial court erred when it sentenced him as an adult pursuant to section 2—7(6)(c) of the Juvenile Court Act. (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(6)(c) (now Ill. Rev. Stat. 1987, ch. 37, par. 805—4(6)(c)).) Defendant raised the issue for the first time when he filed a "supplemental brief" several days prior to oral argument, in violation of Supreme Court Rule 352(f). (107 Ill. 2d R. 352(f).) In the interest of fundamental fairness, we address the issue because of the ramifications it may have on defendant's sentence. See *People v. Hollins* (1972), 51 Ill. 2d 68, 280 N.E.2d 710.

Defendant was prosecuted as an adult for the rape charge and convicted of the lesser included offense of attempted rape. He was sentenced on December 9, 1985, under former section 2—7(6)(c), which provided:

> "If after trial or plea the minor is convicted of an offense [other than murder, *rape*, deviate sexual assault or armed robbery when the armed robbery was committed with a firearm] ***. In sentencing the court shall have available any or all dispositions prescribed for that offense pursuant to Chapter V of

the Unified Code of Corrections and Article 5 of the Juvenile Court Act." (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(6)(c).) Under this section, the trial court had the discretion to sentence a defendant either as an adult or a juvenile when he was convicted of an offense other than those listed in the section. (*In re D.T.* (1986), 141 Ill. App. 3d 1036, 490 N.E.2d 1361.) In the present case, the court, in its discretion, sentenced defendant as an adult to a term of imprisonment under section 5—8—1(a)(4) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(4)).

On appeal, defendant seeks to take advantage of an amendment to section 2—7(6)(c) which became effective December 2, 1985, seven days prior to his sentencing hearing. (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(c).) The amended section provided:

"If after trial or plea the minor is only convicted of an offense [other than murder, *aggravated criminal sexual assault,* armed robbery when the armed robbery was committed with a firearm] *** the court must thereafter proceed pursuant to Sections 4—7 or 4—8 [of the Juvenile Court Act]." (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(6)(c).)

The amendment provided that the trial court must sentence a defendant as a juvenile when he was tried as an adult but convicted of an offense other than those listed in the section. Because the amendment was in effect prior to his sentencing hearing, defendant claims he should have been sentenced as a juvenile.

Defendant ignores, however, the change in the named offenses of section 2—7(6)(c) from rape to aggravated criminal sexual assault. Public Act 83—1067 repealed the offense of rape and replaced it with criminal sexual assault and aggravated criminal sexual assault. (Pub. Act 83—1067, eff. July 1, 1984; Ill. Rev. Stat. 1985, ch. 38, pars. 12—13, 12—14.) The act also amended section 2—7(6)(c), on which defendant relies, replacing rape with aggravated criminal sexual assault.

If any punishment is mitigated by the provisions of a new law, a defendant can consent to the application of the new provision if it became effective prior to his sentencing. (Ill. Rev. Stat. 1985, ch. 1, par. 1103; *People v. Demeron* (1987), 153 Ill. App. 3d 440, 505 N.E.2d 1222.) If, however, the provisions of the new law change the nature or substantive elements of the offense, rather than only the punishment, a defendant cannot take advantage of the mitigation of the punishment in the new law. (*People v. Fisher* (1985), 135 Ill. App. 3d 502, 481 N.E.2d 1233.) From our review of the elements of the former offense of rape and the new offenses of criminal sexual assault and aggravated criminal sexual assault, we find the act changed substantial

elements of the former offense of rape.

Additionally, Public Act 83—1067 was drafted with a savings clause that provides the act is only applicable to persons who commit offenses on or after its effective date of July 1, 1984. (Pub. Act. 83—1067, §27, eff. July 1, 1984.) Defendant committed the offense on January 29, 1984, and therefore, the amendment in Public Act 83—1067 to section 2—7(6)(c) does not apply to his sentence.

Public Act 83—1067 substantially changed the elements of the former offense of rape and is only applicable to offenses committed after July 1, 1984. Accordingly, defendant was properly sentenced as an adult pursuant to former section 2—7(6)(c). Ill. Rev. Stat. 1983, ch. 37, par. 702—7(6)(c).

Lastly, we grant the State's request to assess the sum of $50 against defendant as costs for this appeal (Ill. Rev. Stat. 1985, ch. 53, par. 8(a); *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194) and the sum of $25 as costs for oral argument (Ill. Rev. Stat. 1985, ch. 53, par. 8(a); *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319).

Judgment affirmed.

PINCHAM and MURRAY, JJ., concur.