27 August 1999

NO. 5-98-0774

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

In re
 DETENTION OF )  Appeal from the

WESLEY DIESTELHORST )  Circuit Court of

)  Montgomery County.

(The People of the State of Illinois, )

)

     Petitioner-Appellee, )

)

v. )  No. 98-MR-17 

)

Wesley Diestelhorst, )  Honorable

)  Mark M. Joy,

     Respondent-Appellant). )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

In this case, we examine the Sexually Violent Persons Commitment Act (725 ILCS 207/1 
et seq.
 (West Supp.1997)) to decide whether it empowers the State to civilly commit a person on the verge of release from a sentence imposed upon a conviction for the criminal offense of child abduction. 

The Sexually Violent Persons Commitment Act (the Act) authorizes the State to pursue the civil commitment of certain offenders after the punishment imposed upon their criminal convictions is served, provided that the State can meet certain statutory requirements.  The requirement at issue here limits commitment actions to those inmates whose prison terms stemmed from convictions for sexually violent offenses.  Section 15(b)(2) of the Act reads that an inmate targeted for civil commitment as a sexually violent person must be:

"within 90 days of discharge or entry into mandatory supervised release from a Department of Corrections facility for a sentence that was imposed 
upon a conviction for a sexually violent offense
."  (Emphasis added.)  725 ILCS 207/15(b)(2) (West Supp. 1997). 

This appeal challenges the Act's use to commit an inmate whose sentence was imposed upon a conviction for child abduction.  The challenge rests upon the contention that a child abduction conviction would not qualify a person for commitment under the Act because child abduction is not a sexually violent offense.      

Wesley Diestelhorst is a pedophile.  In 1984, he sexually molested a little girl and a little boy.  A successful criminal prosecution ensued.  His convictions for criminal sexual assault and indecent liberties with a child fetched lengthy prison terms.  Diestelhorst went to prison in early 1985 to serve the sentences imposed upon his convictions.

He remained in prison for 10 years.

On March 17, 1995, the Illinois Department of Corrections placed Diestelhorst on mandatory supervised release.  Shortly thereafter, he attempted to lure a young girl into his car.  His unsuccessful effort resulted in the revocation of his conditional release.  It also resulted in a criminal prosecution for child abduction.  Diestelhorst pled guilty to the child abduction charge in return for a three-year prison sentence.  He then went back to prison to serve the remainder of his 1985 sentences and the three-year prison term imposed upon his conviction for child abduction.

Diestelhorst served the remainder of his 1985 sentences.  With the advent of 1998, the State's only hold on Diestelhorst was the time that remained on the sentence imposed upon his conviction for child abduction.  That prison term was about to run.  The State was obliged to release him from prison on April 10, 1998.

As Diestelhorst's scheduled date with freedom grew near, the State had a clinical psychologist examine him.  The psychologist found a lingering sexual penchant for children.

On April 8, 1998, armed with a commitment petition and a psychological evaluation that predicted that Diestelhorst would likely reoffend, the State sought Diestelhorst's indeterminate commitment as a sexually violent person.  On April 9, 1998, a circuit court judge found probable cause to believe that Diestelhorst met the criteria for civil commitment, and the judge ordered his transfer to Illinois Department of Human Services' custody.  There he remains to await trial on the State's petition to secure his permanent commitment.  That trial awaits the outcome of this interlocutory appeal. 

Diestelhorst moved to dismiss the commitment petition.  In that motion, he engaged the language of section 15(b)(2) of the Act, which requires that a targeted inmate possess a conviction for a sexually violent offense.  Diestelhorst then called upon section 5(e) (725 ILCS 207/5(e) (West Supp. 1997)), the provision of the Act that defines the term "sexually violent offense."  Section 5(e) lists numerous offenses but does not mention the offense of child abduction.  Based upon child abduction's notable absence from the list of crimes set forth as sexually violent offenses, Diestelhorst concluded that his child abduction conviction did not qualify him for commitment under the Act. 

Diestelhorst's motion thus challenged the legal sufficiency of the State's commitment petition based upon the petition's allegation that Diestelhorst would soon be released from a sentence imposed upon a child abduction conviction.

The circuit court denied the motion to dismiss and certified its ruling for immediate appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  We allowed that appeal to proceed.  See 155 Ill. 2d R. 308(a).  

The State agrees that an inmate targeted for commitment must be on the verge of release from a sentence imposed upon a conviction for a sexually violent offense.  See 725 ILCS 207/15(b)(2) (West Supp. 1997).

Therefore, we confront one essential question--whether Diestelhorst's child abduction conviction constitutes a conviction for a sexually violent offense.  If it does, the State can validly petition for Diestelhorst's commitment.  Otherwise, it cannot. 

The answer to this question resides in the meaning to be culled from section 5(e) of the Act, the provision that defines the term "sexually violent offense."  Section 5(e) provides as follows:

"'Sexually violent offense' means any of the following:

(1)  Any crime specified in Section 12-13, 12-14, 12-14.1, or 12-

16 of the Criminal Code of 1961; or

(2)  First[-]degree murder, if it is determined by the agency with jurisdiction to have been sexually motivated; or

(3)  Any solicitation, conspiracy[,] or attempt to commit a crime under paragraph (e)(1) or (e)(2) of this Section."  725 ILCS 207/5(e) (West Supp. 1997).

We note that child abduction is not one of the offenses set forth in the statutory provision that tells us what the term "sexually violent offense" means.  But before we conclude that child abduction's absence from this list evinces a legislative intent to exclude those convicted of child abduction from the Act's reach, we must consider the State's construction of section 5(e) of the Act.

The State offers a view of section 5(e) that successfully resulted in Diestelhorst's interim commitment pending the outcome of this appeal.  It is a view that frames the inquiry into whether Diestelhorst's child abduction conviction can constitute a conviction for a sexually violent offense.  The State reads section 5(e) in the following manner.  

Section 5(e) is not a list of criminal offenses for which a conviction qualifies an individual for commitment under the Act.  It is not designed to restrict the Act's reach to only those individuals convicted of criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, aggravated criminal sexual abuse, sexually motivated first-degree murder, or any solicitation, conspiracy, or attempt to commit one of those crimes. 

The legislature employed the language in section 5(e)(3) to reach more than a field of three inchoate crimes defined under the Criminal Code of 1961 (720 ILCS 5/1 
et seq.
 (West 1996)).  Legislators did not intend to confine the term "sexually violent offense" to the crimes of solicitation, conspiracy, or attempt.  They had a broader design in mind.  They intended to reach 
any
 generic attempt to commit one of the other crimes set forth as sexually violent offenses.  

Because the legislature was not thinking in terms of criminally defined conduct, section 5(e)(3) should not be read to restrain commitment actions to only those who have been convicted of solicitation, conspiracy, or attempt to commit one of the other sexually violent offenses.  Nor should section 5(e)(3) be read to require criminal conduct, 
i.e.
, conduct that rises to the level of a criminal solicitation, conspiracy, or attempt.  Any attempt, as attempt is generally defined--any effort, undertaking, or endeavor to commit one of the sexually violent offenses specified in sections 5(e)(1) or 5(e)(2)--whether that attempt would amount to a substantial step toward the crime's commission or not, should qualify for purposes of commitment under the Act.

Following the State's proposed construction of section 5(e), the legislature contemplated the Act's use against Diestelhorst.  Diestelhorst stands convicted of an unsuccessful effort to lure a minor into his car.  However, when he engaged in that conduct, he possessed a more sinister criminal objective.  Diestelhorst had in mind the gratification of an aberrant sexual preference.  He wanted to sexually molest his prey.  Ergo, Diestelhorst's child abduction was an attempt in the general sense of the word; it was an effort or undertaking to commit a sexual assault, a crime specified under section 5(e)(1).  Diestelhorst's child abduction conviction thus constitutes a conviction for a sexually violent offense because it conforms to the legislative plan crafted into section 5(e)(3).  The circuit court followed this reading of the Act when it addressed Diestelhorst's motion to dismiss:

"Respondent Wesley Diestelhorst was last convicted of child abduction, which is not a sexually violent offense as defined by [section 5(e)(1) (725 ILCS 207/5(e)(1) (West Supp. 1997))].  The question for purposes of the [m]otion to [d]ismiss is whether under the facts of the underlying child abduction case an attempt to commit that offense could come within [section] 5(e)(3).

If the statute provided that the offense of [a]ttempt as defined in [section 8-4 of the Criminal Code of 1961 (720 ILCS 5/8-4 (West 1996))] must be charged, and a conviction obtained, for one of the offenses stated in [section] 5(e)[,] then the answer is no.  But the statute does not say that.  As the Court interprets it, there only must be an attempt in the general or generic sense of the word to commit one of the offenses in [section] 5(e)(1)."

The circuit court concluded that Diestelhorst's conviction could constitute a conviction for a sexually violent offense, and the court denied the motion to dismiss.  We now reverse.   In deciding what the legislature was trying to do when it passed section 15(b)(2) and section 5(e) of the Act, we are guided by a fundamental rule of statutory construction--to ascertain and give effect to the true intent and meaning of the legislature.  See 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990).  In order to discern the true intent, we look to the words used by the legislature in the statute itself as the best indicators of what the statute means.  See 
Kraft, Inc.
, 138 Ill. 2d at 189, 561 N.E.2d at 661.  The statutory language is a reliable indicator of true meaning only when it is read in the context of the entire Act.  Section 15(b)(2) and section 5(e) must be read in conjunction with one another and their language so construed as to make them harmonious and consistent.  See 
Kraft, Inc.
, 138 Ill. 2d at 189, 561 N.E.2d at 661.  Their words cannot be read in a fashion that would render other words or phrases, meaningless, redundant, or superfluous.  See 
Kraft, Inc.
, 138 Ill. 2d at 189, 561 N.E.2d at 661.

Applying these tools of statutory construction, we believe that the legislature enacted section 5(e) to confine the term "sexually violent offense" to four distinct sexual offenses (criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, and aggravated criminal sexual abuse), sexually motivated first-degree murder, and three inchoate offenses (solicitation, conspiracy, or attempt to commit any of the other five sexually violent offenses).  We find that child abduction's salient absence from the crimes listed as sexually violent offenses attests to the legislature's intent to exclude persons convicted of that offense from the Act's reach.  

Diestelhorst could have been pursued under the Act within 90 days of his release from the 1985 sentence for criminal sexual assault.  However, the sentence for that offense had run by the time the commitment action was brought.
(footnote: 1)  Diestelhorst's sentence for child abduction does not constitute a sentence imposed upon a conviction for a sexually violent offense.  Therefore, the State did not plead a prerequisite for commitment under the Act.

We decline the State's invitation to construe section 5(e)(3) as a legislative device designed to reach any kind of effort, or generic attempt, to commit one of the crimes specified under sections 5(e)(1) or 5(e)(2).  Under such a construction, a conviction for any offense could constitute a conviction for a sexually violent offense, provided that an unfulfilled aspiration to commit a sexually violent crime could be assigned to the offender.  The Act's sweep would rest upon an assignment of motivation rather than adjudicated guilt, something we do not believe the legislature intended.    

Section 15(b)(2) and section 5(e), when read in conjunction with one another, work an intended limitation on the State's commitment power.  Under section 15(b)(2), the State is required to establish that it commenced its commitment action while its target was "within 90 days of discharge or entry into mandatory supervised release from a Department of Corrections facility 
for a sentence
 that was 
imposed upon a conviction for a sexually violent offense
."  (Emphasis added.)  725 ILCS 207/15(b)(2) (West Supp. 1997).  This provision authorizes the statute's use to commit people who are about to serve out prison terms imposed upon convictions for certain select crimes.  It is an intended limitation of the Act's reach to those convicted of particularly egregious criminal offenses.  Section 15(b)(2) contemplates a provision that sets forth an array of crimes, the conviction of which authorizes postpunishment commitment under the Act.  Section 5(e) of the Act provides that array. 

The true legislative design reveals itself by reading sections 15(b)(2) and 5(e) in relationship to one another.  When the legislature wrote that "'[s]exually violent offense' means *** [a]ny crime specified in Section 12-13, 12-14, 12-14.1, or 12-16 of the Criminal Code of 1961" (725 ILCS 207/5(e)(1) (West Supp. 1997)), the legislature intended to reach
 
any person 
convicted of and sentenced for
 criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, or aggravated criminal sexual abuse.  When the legislature wrote that "'[s]exually violent offense' means *** [f]irst[-]degree murder, if it is determined by the agency with jurisdiction to have been sexually motivated" (725 ILCS 207/5(e)(2) (West Supp. 1997)), the legislature intended to reach any person 
convicted of and sentenced for
 a sexually motivated first-degree murder.  The legislature relied on section 15(b)(2) to provide an understanding that the offenses listed in sections 5(e)(1) and 5(e)(2) were sexually violent crimes for which a person had to be convicted.  The same reliance applies to section 5(e)(3).  Thus, when the legislature wrote that "'[s]exually violent offense' means *** [a]ny solicitation, conspiracy, or attempt to commit a crime under paragraph (e)(1) or (e)(2) of this Section" (725 ILCS 207/5(e)(3) (West Supp. 1997)), the legislature intended to reach any person 
convicted of and sentenced for
 solicitation, conspiracy, or attempt to commit one of the other specifically designated sexually violent offenses.  

The plain language of the statute requires that targets of commitment actions must be serving sentences imposed upon 
convictions for sexually violent offenses
.  By its passage of section 5(e)(3), the legislature sought to bring those 
convicted
 of criminal solicitations, conspiracies, or attempts within the ambit of postpunishment civil commitment.  Since no one has ever been convicted of, or imprisoned for, a generic conspiracy, our legislature must have had in mind the Criminal Code of 1961, rather than Webster's Dictionary, when it enacted section 5(e)(3).

The circuit court indicated that it would not have construed section 5(e)(3) to implicate generic attempts if that section had articulated that a person had to be charged with, and convicted of, the offense of attempt under the Criminal Code of 1961.  However, the circuit court failed to read section 5(e) in light of section 15(b)(2).  In section 15(b)(2), the legislature required impending release from a prison sentence that stemmed from a conviction--a criminal adjudication of guilt--for any crime designated a sexually violent offense.  The legislature used section 5(e) to designate those crimes that would constitute sexually violent offenses.  The list of crimes provided defines the offenses for which a conviction qualifies an inmate for commitment under the Act.  Sections 5(e)(1), 5(e)(2), and 5(e)(3) do not repeat the word 
conviction
 because section 15(b)(2)  requires a conviction for each of the offenses listed.  The legislature omitted the word 
conviction
 from section 5(e)(3) in the same manner, and for the same reason, that the word was omitted from section 5(e)(1) and 5(e)(2).  It was unnecessary.  The legislature clearly spelled out in section 15(b)(2) that the Act only applied to persons about to be released from sentences imposed upon criminal convictions.  

Had the legislature wanted to reach noncriminal generic efforts to fulfill sexual aspirations and designed the statute accordingly, it would have dispensed with a list of specific crimes and simply employed section 15(b)(2) to articulate that the inmate's sentence must stem from a conviction for any sexually motivated offense.  

This is underscored by the legislature's express desire that first-degree murder constitute a sexually violent offense, provided that the killing was sexually motivated.  If the legislature intended to reach any sexually motivated crime as a generic attempt to commit one of the offenses found in section 5(e)(1), the legislature would not have enacted section 5(e)(2).  Providing a separate subsection for sexually motivated first-degree murder would be pointless. 

The State's construction also creates a redundancy in section 5(e)(3).  If any generalized attempt could constitute a sexually violent offense, the legislature did not have to include the words 
solicitation
 or 
conspiracy
 within that provision.  Any solicitation or conspiracy would also constitute an effort, or generalized attempt, to commit one of the other sexually violent offenses.  

Finally, we are convinced that had the legislature intended to reach an inmate convicted of child abduction or inmates convicted of any sexually motivated offenses other than first-degree murder, it would have simply said so.  See 730 ILCS 5/5-4-3(g)(3) (West 1996) (offense of child abduction expressly included in the definition of "sexual offense" for purposes of requiring certain sex offenders to submit blood specimens to the Illinois State Police); see also 725 ILCS 207/5(e)(2) (West Supp. 1997). 

We conclude that the legislature's true intention was to restrict the use of postpunishment civil commitment to sexually violent persons about to serve out sentences imposed upon convictions for the crimes set forth in section 5(e) of the Act.  Since child abduction is not a crime for which a conviction invites commitment under the Act, the State's commitment petition should have been dismissed.  It was not filed within 90 days of Diestelhorst's release from a Department of Corrections facility for a sentence imposed upon a conviction for a sexually violent offense. 

Accordingly, we reverse the judgment of the Montgomery County Circuit Court.

Certified question answered; judgment reversed.

HOPKINS and GOLDENHERSH, JJ., concur.

FOOTNOTES
1:
We note that Public Act 90-793 amended section 15(b)(2), expanding its application to "a sentence that is being served concurrently or consecutively with a sexually violent offense ***."  Pub. Act 90-793, eff. August 14, 1998 (amending 725 ILCS 207/15(b)(2) (West 1997)).  The question of this amendment's application to the instant case has not been raised.