*In re* DETENTION OF BRAD LIEBERMAN (The People of the State of Illinois, Petitioner-Appellee, v. Brad Lieberman, Respondent-Appellant).

First District (2nd Division)   No. 1—00—0508

Opinion filed March 13, 2001.

Thomas A. Reynolds III, Christopher S. Canning, Brian D. Fergemann, and Kimball R. Anderson (argued), all of Winston & Strawn, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers, and Lisa Anne Hoffman, Assistant Attorneys General, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

Respondent Brad Lieberman was convicted of a series of rapes under several indictments in 1980. Respondent was sentenced to a number of concurrent sentences, the longest of which required him to serve 40 years in prison. In January 2000, prior to respondent's entry into mandatory supervised release, the State filed a petition to have him civilly committed as a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (the Commitment Act or Act) (725 ILCS 207/1 *et seq.* (West 1998)). Respondent moved to dismiss the State's petition pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)) on the basis that the crime of rape, for which he was convicted, was not a "sexually violent offense" as defined by the Commitment Act. See 725 ILCS 207/5(e) (West 1998). The circuit court denied respondent's motion to dismiss. Upon the motion of respondent, the circuit court certified a question for interlocutory appeal pursuant to Supreme Court Rule 308(a). 155 Ill. 2d R. 308(a). Respondent's application to this court for leave to file an interlocutory appeal was granted. The question certified was "[w]hether the Respondent's conviction for the crime of rape (Ill. Rev. Stat. Ch. 38 § 11—1), is a conviction of a sexually violent offense for purposes of a civil commitment of a 'sexually violent person' under the Sexually Violent Persons Commitment Act, 725 ILCS 207 *et seq.*"

In 1980, respondent was convicted in Cook County of six rape offenses and several other offenses. He successfully appealed his original sentence on one of the rape convictions (*People v. Lieberman*, 107 Ill. App. 3d 949, 438 N.E.2d 516 (1982)) and, on remand, was sentenced to a 40-year prison term to run concurrent to his 30-year terms on the other rape convictions and a 30-year term imposed for a rape conviction in Lake County.

Respondent was scheduled to be released from prison on January 9, 2000. On January 6, 2000, the State filed a petition pursuant to the Commitment Act seeking to commit respondent to the Illinois Department of Human Services as a sexually violent person. The petition alleged that respondent had been convicted of a number of sexually violent offenses and was dangerous to others because his mental disorders created a substantial probability that he would engage in future acts of sexual violence. Attached to the petition was a psychological evaluation of respondent that had been conducted on October 15, 1999, for the purpose of determining whether he met the criteria for commit-

ment under the Commitment Act. That evaluation concluded that it was substantially probable respondent would engage in continued acts of sexual violence upon his release from prison and recommended he be civilly committed as a sexually violent person.

Respondent moved to dismiss the State's petition on January 10, 2000, contending, *inter alia*, that the petition should be dismissed because he had not been convicted of one of the sexually violent offenses enumerated in section 5(e) of the Commitment Act. 725 ILCS 207/ 5(e) (West 1998). Arguments on respondent's motion to dismiss were heard on January 19, 2000. On February 1, 2000, respondent's motion to dismiss was orally denied. Respondent was, however, granted leave to file a motion for certification under Rule 308(a). 155 Ill. 2d R. 308(a). This court granted respondent's application for leave to file an interlocutory appeal. The question certified for appeal was "[w]hether the Respondent's conviction for the crime of rape (Ill. Rev. Stat. Ch. 38 § 11—1), is a conviction of a sexually violent offense for purposes of a civil commitment of a 'sexually violent person' under the Sexually Violent Persons Commitment Act, 725 ILCS 207 *et seq.*"

The Criminal Code of 1961 has not contained the offense of rape since 1984, when the offense was repealed by Public Act 83—1067. Pub. Act 83—1067, eff. July 1, 1984. Public Act 83—1067 was a major overhaul of the sexual crime statutes that, *inter alia*, abolished the offenses of rape, deviate sexual assault, indecent liberties with a child, aggravated indecent liberties with a child, contributing to the sexual delinquency of a child, aggravated incest, and sexual abuse of a child by a family member. Pub. Act 83—1067, eff. July 1, 1984; A. Jaffe & R. Becker, *Four New Basic Sex Offenses: A Fundamental Shift in Emphasis*, 72 Ill. B.J. 400, 401 (1984). In place of the repealed offenses, Public Act 83—1067 created four new offenses: criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse, and aggravated criminal sexual abuse. Pub. Act 83—1067, eff. July 1, 1984.

Prior to its repeal, the offense of rape was defined as having occurred when "[a] male person of the age of 14 years and upwards *** has sexual intercourse with a female, not his wife, by force and against her will." Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a). Sexual intercourse was defined as having occurred when there was "any penetration of the female sex organ by the male sex organ." Ill. Rev. Stat. 1983, ch. 38, par. 11—1(b). Criminal sexual assault occurs where an accused:

> "(1) commits an act of sexual penetration by the use of force or threat of force; or
>
> (2) commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent; or

(3) commits an act of sexual penetration with a victim who was under 18 years of age when the act was committed and the accused was a family member; or

(4) commits an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim." 720 ILCS 5/12—13(a) (West 1998).

Sexual penetration, for purposes of criminal and aggravated criminal sexual assault, is defined as:

"any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12—12(f) (West 1998). .

■ The Commitment Act, which became effective January 1, 1998, allows the State to civilly commit certain criminal offenders after the offenders have completed their imposed periods of incarceration. 725 ILCS 207/1 *et seq.* (West 1998). To be subject to the Act, an offender is required to have been convicted of a "sexually violent offense." "Sexually violent offense" is defined under the Commitment Act as:

"(1) Any crime specified in Section 12—13, 12—14, 12—14.1, or 12—16 of the Criminal Code of 1961; or

(2) First degree murder, if it is determined by the agency with jurisdiction to have been sexually motivated; or

(3) Any solicitation, conspiracy or attempt to commit a crime under paragraph (e)(1) or (e)(2) of this Section." 725 ILCS 207/5(e) (West 1998).

The crimes specified in sections 12—13, 12—14, 12—14.1, and 12—16 of the Criminal Code of 1961 are, respectively, criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, and aggravated criminal sexual abuse. 720 ILCS 5/12—13, 12—14, 12—14.1, 12—16 (West 1998).

Respondent argues that where the State has failed to allege that he was convicted of any of the enumerated offenses, but has instead alleged that he was convicted of the now-abolished offense of rape, the State has failed to allege that he committed a "sexually violent offense" as defined in the Commitment Act and the circuit court therefore erred in denying his motion to dismiss the State's petition.

■ The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Nottage v. Jeka*, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996). The language of the statute itself provides the best indication of the legislature's intent. *Nottage*, 172 Ill.

2d at 392; *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 441-42, 593 N.E.2d 522 (1992). Where the statutory language is clear, it is unnecessary to resort to other tools of statutory interpretation. *Nottage*, 172 Ill. 2d at 392.

■ The Commitment Act plainly defines the offenses that are characterized as "sexually violent offenses." The former offense of rape is not among them. "Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation." *Burke*, 148 Ill. 2d at 442. Indeed, in *In re Detention of Diestelhorst*, 307 Ill. App. 3d 123, 128-29, 716 N.E.2d 823 (1999), the Fifth District, employing basic law concerning statutory construction, determined that the legislature, in enacting section 5(e), intended to confine the term "sexually violent offense" to the four distinct sexual offenses listed, plus sexually motivated first-degree murder, and solicitation, conspiracy, or attempt to commit any of the listed offenses.

At issue in *Diestelhorst* was whether the Commitment Act empowered the State to civilly commit a person about to be released from prison after serving a sentence for a child abduction conviction. Because the offense of child abduction was absent from the list of sexually violent offenses in the Commitment Act, the court concluded that the legislature's intent was to exclude persons convicted of child abduction from the Act's reach. *Diestelhorst*, 307 Ill. App. 3d at 131.

The State maintains that *Diestelhorst* is distinguishable because the elements of the offense of child abduction at issue in *Diestelhorst* are not present in the offenses enumerated in section 5(e) of the Commitment Act, while the elements of the former offense of rape were "subsumed" into the offenses of criminal and aggravated criminal sexual assault when those offenses were created in 1984. The State's argument regarding rape being subsumed by criminal and aggravated criminal sexual assault requires us to look further into the legislative intent of the statutory sections at issue.

The State, citing various statements in the legislative debates leading to the enactment of the Commitment Act, concludes that the problem the legislature sought to remedy by means of the Act "was the danger of recidivism by violent sex offenders and the purpose to be achieved was the protection of the public from such continued violent sex crimes." While the State has accurately stated the broad purpose of the Commitment Act, nothing in the legislative debates convinces us that the legislature believed it unnecessary to specify that the Act applied to persons convicted of the repealed offense of rape simply because the Act enumerated that it applied to persons who had been convicted of criminal and aggravated criminal sexual assault. To the

contrary, after the briefs on appeal in this matter had been filed, the legislature amended the definition of "sexually violent offense" under the Commitment Act to include the now-abolished offenses of rape, deviate sexual assault, indecent liberties with a child, and aggravated indecent liberties with a child. Pub. Act 91—875, eff. June 30, 2000. The legislative debates concerning Public Act 91—875 indicate that the offenses added to the definition of "sexually violent offense" by the amendatory act had been "overlooked" when the Commitment Act was originally passed. 91st Ill. Gen. Assem., Senate Proceedings, April 7, 2000, at 64 (statements of Senator Cronin). In addition, in the circuit court proceedings below, the State acknowledged in its reply to respondent's motion to dismiss that the failure to include the crime of rape in the definition of "sexually violent offense" in the Commitment Act was simply "an oversight" in the drafting of the Act. The legislative debates concerning Public Act 91—875 indicate that the amendatory addition of the now-repealed offenses through that act was the initiative of the Illinois Attorney General, who also represents the State in this appeal. 91st Ill. Gen. Assem., Senate Proceedings, April 7, 2000, at 64 (statements of Senator Cronin); 91st Ill. Gen. Assem., House Proceedings, March 3, 2000, at 192 (statements of Representative J. Turner). Despite the Attorney General's involvement in the enactment of Public Act 91—875, there is no indication in either the amendatory act or the legislative debates leading to the act that the addition of these now-abolished offenses as enumerated sexually violent offenses under the Commitment Act was merely a clarification of existing law.

We next address the State's contention that the offenses of criminal and aggravated criminal sexual assault should be treated as a continuation of the repealed offense of rape.

When the rape statute was repealed and the offenses of criminal and aggravated criminal sexual assault were created, a "saving clause" was enacted along with them. The saving clause provided:

> "Saving clause, construction. The abolition of any offense by this Act does not affect any prosecution pending, penalty, punishment, disqualification from office or employment, forfeiture incurred, or rights, powers or remedies accrued under any law in effect immediately prior to the effective date of this amendatory Act of 1983, which related to the abolished offense. *The provisions of this amendatory Act insofar as they are the same or substantially the same as those of any prior statute, shall be construed as a continuation of such prior statute and not as a new enactment.*
>
> This amendatory Act of 1983 shall only apply to those persons who commit offenses prohibited under Sections 12—13 through

12—16 of the Criminal Code of 1961, as amended, on or after the effective date of this amendatory Act." Pub. Act 83—1067 (eff. July 1, 1984).

Respondent argues that the italicized language is without effect as to rape because there are significant differences between the offense of rape and the new sex offenses. The State acknowledges that there are differences between rape and the sexual assault offenses but contends that where a person who had committed the former offense of rape would, by those same actions, be guilty of criminal or aggravated criminal sexual assault under the new provisions, the saving clause dictates that the new offenses be treated as a continuation of the offense of rape. A conviction for rape, the State concludes, could therefore subject an offender to civil commitment proceedings under the Commitment Act.

We find no support for the State's interpretation of the saving clause in either case law, legislative history, or a comparison of the various offenses.

According to its Senate sponsor, the purpose of Public Act 83—1067 was "to take a hodgepodge of preexisting Statutes and fit them into a consistent coherent whole which is a spectrum of sex offenses." 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 351 (statements of Senator Netsch). Others also noted the broad scope of Public Act 83—1067. See A. Inman & M. Lewis, *HB 606: New Problems of Policy and Enforcement*, 72 Ill. B.J. 404, 404 (1984) (noting that House Bill 606/Public Act 83—1067 constituted "a complete overhaul of the present system of defining sex offenses").

As a part of Public Act 83—1067, the offense of rape, along with a number of other sexual offenses, was repealed. Four new sexual offenses, including the offenses of criminal and aggravated criminal sexual assault, were created. Pub. Act 83—1067, eff. July 1, 1984. The new sexual assault offenses were gender neutral, as opposed to rape, which was only concerned with male offenders and female victims. Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a), with 720 ILCS 5/12—13, 12—14 (West 1998). The new offenses did not require evidence of a victim's state of mind, in contrast to rape, which had required proof that the acts were against the will of the victim. Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a), with 720 ILCS 5/12—13, 12—14 (West 1998). Significantly, substantial changes were made to many of the definitions related to sexual crimes, including the definitions of "penetration" and "force or threat of force." Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1, with 720 ILCS 5/12—12(d), (f) (West 1998). The newly created offenses allowed for a person to be charged with sexually assaulting his or her spouse, whereas rape had been limited

to acts committed by a man against a woman who was not his wife. Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a), with 720 ILCS 5/12—12(g), 12—13(a) (West 1998). Finally, the sentencing scheme was altered, allowing conduct that previously would have been the Class X felony of rape to be charged as the Class 1 felony of criminal sexual assault in certain cases. Compare Ill. Rev. Stat. 1983, ch. 38, par. 11—1(c), with 720 ILCS 5/12—13(b)(1) (West 1998).

The legislative history of House Bill 606, which became Public Act 83—1067, does not provide support for the State's claim that the elements of the offense of rape were unchanged with the creation of the sexual assault offenses. Indeed, the Senate sponsor of the legislation noted that the bill "defines sexual assault in terms of the defendant's behavior rather than the state of mind of the victim, something which has been an element of rape from time immemorial." 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 352 (statements of Senator Netsch). Another Senator noted that the bill changed the elements of the repealed crimes. 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 358 (statements of Senator Bloom). See also 72 Ill. B.J. at 405 (observing that Public Act 83—1067 "clearly abandons the traditional concept of rape").

In *People v. Land*, 178 Ill. App. 3d 251, 259-60, 533 N.E.2d 57 (1988), a 16-year-old defendant had been sentenced as an adult for attempted rape under a statutory provision that gave the trial court discretion whether to sentence the defendant as an adult or juvenile where he was convicted of an offense other than several enumerated offenses, including rape. Between the time of the defendant's arrest and his sentencing, the statutory provisions at issue were amended. The amendatory changes replaced the term "rape" with the term "aggravated criminal sexual assault" and eliminated judicial discretion, requiring instead that a minor tried as an adult but convicted of offenses other than those listed be sentenced as a juvenile. *Land*, 178 Ill. App. 3d at 260. The defendant argued on appeal that the amendatory changes should apply to his case and that the trial court had thus erred in sentencing him as an adult. This court first noted that although a defendant could take advantage of the mitigation of punishment in a new law where it became effective prior to his sentencing, it could not do so where the new law changed the nature or substantive elements of the offense rather than only the punishment. *Land*, 178 Ill. App. 3d at 261. The court, noting that some of the amendatory changes had been made by Public Act 83—1067, compared the elements of the former offense of rape and the new offenses of criminal sexual assault and aggravated criminal sexual assault, and concluded that Public Act 83—1067 had substantially changed the elements of the former offense of rape. *Land*, 178 Ill. App. 3d at 260-61.

The State argues that *Land* concerned provisions other than those at issue in this case. We disagree. Although the decision in *Land* concerned the application of amendments to the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, pars. 702—7(6)(a), (c); Ill. Rev. Stat. 1987, ch. 37, pars. 805—4(6)(a), (c)), the court looked to the changes made by Public Act 83—1067 in repealing the offense of rape and creating the offenses of criminal and aggravated criminal sexual assault in determining whether the mitigating changes made by the amendments to the Juvenile Court Act were applicable to the defendant there. In other words, our finding that there were substantial changes to the elements of the former offense of rape upon the enactment of the new offenses of criminal and aggravated criminal sexual assault is applicable to the instant case. We find no merit to the State's argument that "*Land* does not stand for the proposition that the enactment of criminal and aggravated criminal sexual assault changed substantial elements of the former offense of rape" when *Land* does, in fact, stand for exactly that. We believe that the quoted language from *Land* clearly supports respondent's position and further note that the State was unable to cite any case authority supporting its interpretation of the saving clause in Public Act 83—1067 or its interpretation of the Commitment Act.

Additional review of Illinois case law concerning Public Act 83—1067 also provides support for respondent's position. In both *People v. Fisher*, 135 Ill. App. 3d 502, 481 N.E.2d 1233 (1985), and *People v. Mack*, 133 Ill. App. 3d 788, 479 N.E.2d 445 (1985), *overruled in part on other grounds*, *People v. Wendt*, 163 Ill. 2d 346, 645 N.E.2d 179 (1994), the defendants were convicted of indecent liberties with a child. The defendants argued on appeal that the conduct leading to convictions for indecent liberties with a child would have led to convictions for either criminal or aggravated criminal sexual abuse following the enactment of Public Act 83—1067 and that they should have therefore been given the option to elect sentencing under the new statutes. *Fisher*, 135 Ill. App. 3d at 507-08; *Mack*, 133 Ill. App. 3d at 796. The appellate court in both cases rejected the defendants' claims, based in part on findings that the enactment of Public Act 83—1067 had substantively changed the nature of the offenses with which the defendants had been charged, rather than just the sentencing. See *Fisher*, 135 Ill. App. 3d at 508 (finding that the enactment of Public Act 83—1067 "substantively changed" the nature of the indecent liberties with a child offenses with which the defendant was charged); *Mack*, 133 Ill. App. 3d at 796-97 (finding that Public Act 83—1067 had affected substantive elements of the offense rather than changing sentencing only). In both *Fisher* and *Mack* the defendants made es-

sentially the same argument the State makes here when it maintains that the saving clause in Public Act 83—1067 should apply because the actions of respondent in committing his offenses could, if committed today, have subjected him to prosecution under the sexual assault statutes. Despite the fact that respondent's actions could still constitute a crime after the repeal of the rape statute, the saving clause in Public Act 83—1067 is inapplicable where the provisions of the offense of rape and the sexual assault offenses are not the same or substantially the same.

We find that the provisions of the former offense of rape were not the same or substantially the same as the elements of the offenses of criminal and aggravated criminal sexual assault. We further find that the legislative debates concerning Public Act 83—1067 and subsequent case law provide support for respondent's position and fail to support the State's position.

The application of the saving clause in Public Act 83—1067 is also placed in doubt by the language in the Commitment Act and the saving clause itself. The court in *Diestelhorst*, 307 Ill. App. 3d at 130, noted that the legislature, through its definition of "sexually violent offense" in section 5(e) of the Commitment Act, "intended to reach any person *convicted of and sentenced for* criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, or aggravated criminal sexual abuse." (Emphasis in original.) Respondent was never convicted of or sentenced for any of the enumerated crimes. Further, the saving clause upon which the State depends states that the offenses created in Public Act 83—1067 "shall only apply to those persons who commit offenses prohibited under [the newly created sections of the Criminal Code of 1961] on or after the effective date of [Public Act 83—1067]." Pub. Act 83—1067, eff. July 1, 1984. The effective date of Public Act 83—1067, July 1, 1984, was well after the dates of the crimes committed by respondent. Thus, this portion of the saving clause in Public Act 83—1067 would itself appear to preclude the respondent from being subject to the statutory sections containing the offenses of criminal and aggravated criminal sexual assault. Where respondent was not subject to the changes made by Public Act 83—1067, we fail to see how he could be deemed to have committed criminal or aggravated criminal sexual assault for purposes of the Commitment Act, which was passed some 17 years after respondent's convictions.

Both parties, on appeal, have discussed language used in other statutory sections. The circuit court, in ruling on respondent's motion to dismiss, held that it did not see how the legislature could "incorporate a crime [rape] that did not exist at the time that [the

Commitment Act] was enacted." The court therefore concluded that "the legislature did not spell out rape because rape was not on the books." Respondent contends that language used in other statutory sections indicates that the legislature was capable of creating laws either explicitly or implicitly referencing the now-repealed offense of rape where it desired to do so. As noted earlier, subsequent to the filing of the briefs on appeal, the legislature has amended the definition of "sexually violent offense" in the Commitment Act to include the now-repealed offenses of rape, deviate sexual assault, indecent liberties with a child, and aggravated indecent liberties with a child. Pub. Act 91—875, eff. June 30, 2000. In so doing, the legislature not only declared on the record that its failure to include rape and the other offenses earlier had been "an oversight" (91st Ill. Gen. Assem., Senate Proceedings, April 7, 2000, at 64 (statements of Senator Cronin)), but demonstrated that the legislature is perfectly capable of specifying the former offense of rape in a statute when necessary.

Respondent's citation to other statutory sections either explicitly referring to rape or making reference to "any former statute" which defined a felony sexual offense also supports his contention that the legislature has the ability to refer to the former offense of rape where it so desires. See 735 ILCS 5/8—802.1(a) (West 1998) (concerning the confidentiality of statements made to rape crisis personnel and specifying that, on or after July 1, 1984, rape "means an act of forced sexual penetration or sexual conduct, as defined in Section 12—12 of the Criminal Code of 1961, as amended, including acts prohibited under Sections 12—13 through 12—16 of the Criminal Code of 1961, as amended"); 730 ILCS 5/5—4—3(g)(2) (West 1998) (defining sexual offense as any of a number of enumerated offenses or "[a]ny former statute of this State which defined a felony sexual offense").

Finally, we find this case analogous in a number of ways to the California case of *People v. West*, 70 Cal. App. 4th 248, 82 Cal. Rptr. 2d 549 (1999), discussed by the parties on appeal. In *West*, 70 Cal. App. 4th at 250, 82 Cal. Rptr. 2d at 550, the appellant had been declared a "sexually violent predator" and was committed to the Department of Mental Health pursuant to the Sexually Violent Predators Act (Cal. Welf. & Inst. Code § 6600 *et seq*. (West 1998)), an act with similarities to Illinois's own Commitment Act. On appeal, the court was forced to concede that despite the appellant's "egregious record and evident danger to the public" within the meaning of the Sexually Violent Predators Act, the plain language of the statute had created an anomaly that inured to the appellant's benefit. *West*, 70 Cal. App. 4th at 250-51, 82 Cal. Rptr. 2d at 550-51. Specifically, a sexually violent predator under the act was defined as being a person who had been

"convicted of a sexually violent offense against two or more victims for which he or she received a *determinate* sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Emphasis in original.) *West*, 70 Cal. App. 4th at 251, 82 Cal. Rptr. 2d at 551. The appellant had been convicted of rape in 1975 and had been given an *indeterminate* sentence. The following year, California adopted determinate sentencing. The appellate court concluded that the legislature reasonably could have decided that a person who had not had two convictions for sexually violent offenses within the 18-year period between the enactment of determinate sentencing and the creation of the Sexually Violent Predators Act was not sufficiently predatory to be targeted by the latter act. *West*, 70 Cal. App. 4th at 258-59, 82 Cal. Rptr. 2d at 556. Shortly after the appellant's trial, the California legislature amended the predators act to bring the facts of the appellant's case within the definition of sexually violent predator. Although the State contended that the amendment merely clarified the existing statute, the court was forced to reject that interpretation where nothing in the amendment suggested it was only a clarification and the legislative history termed the amendment an "increase" in the definition. *West*, 70 Cal. App. 4th at 259-60, 82 Cal. Rptr. 2d at 556.

Like respondent, the defendant in *West* was a sexually violent person whom the State attempted to commit through a legislative act enacted long after the original offenses were committed. In both instances, legislative oversights in the drafting of the commitment statutes resulted in a lack of express coverage under the acts for persons who appear otherwise suitable for commitment as sexually dangerous persons. In both cases, subsequent attempts by the legislature to correct the anomaly came after the fact.

■ We agree with the State that the enactment of the Commitment Act in 1998 was specifically designed to keep sexually violent offenders about to be released from prison from being released back into society where they could potentially commit sexually violent offenses against new victims. Moreover, had respondent been convicted under the offenses created by Public Act 83—1067, we would not be facing the certified question posed here. Nonetheless, although the allegations contained in the State's petition are compelling, we are required to answer the certified question in the negative. Our answer to the certified question is dictated by the plain language of the statute, evidence indicating that the legislature's failure to include the former offense of rape in the Commitment Act was an oversight, and the lack of legislative history and case law supporting the State's arguments. We

note, as was the case in *West*, that the Illinois General Assembly has now corrected its previous oversight.

For the reasons stated, we find that respondent's conviction for the crime of rape was not a conviction of a sexually violent offense for purposes of a civil commitment of a "sexually violent person" pursuant to the Sexually Violent Persons Commitment Act as it existed at the time. The certified question is therefore answered in the negative and the circuit court's denial of respondent's motion to dismiss the State's petition to civilly commit respondent as a sexually violent person is reversed.

Certified question answered; judgment reversed.

COUSINS and GORDON, JJ., concur.