THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE BELL, Defendant-Appellant.

Second District   No. 2—01—0279

Opinion filed August 21, 2002.

G. Joseph Weller and Dev A. Parikh, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KAPALA delivered the opinion of the court:

Following a bench trial, defendant, Willie Bell, was found guilty of unlawful failure to register as a sex offender under the Sex Offender Registration Act (Act or Registration Act) (730 ILCS 150/1 *et seq.* (West 2000)). More specifically, defendant was convicted of failing to notify the proper authorities in writing within 10 days after he changed his residential address as mandated by section 6 of the Act (730 ILCS 150/6 (West 2000)). Defendant appeals and contends that his conviction of unlawful failure to register as a sex offender should be reversed because (1) rape is not a sexually violent offense that required him to register under the Act and (2) the State failed to prove him guilty beyond a reasonable doubt. For the reasons that follow, we affirm.

The record reveals that in 1981, a jury found defendant guilty of rape and other offenses. Defendant was subsequently sentenced to 30 years' incarceration. On March 11, 1996, defendant was released from incarceration. On March 25, 1996, pursuant to the Act, defendant registered as a sex offender with the Du Page County sheriff's department (sheriff's department). Defendant renewed his registration as a sex offender with the sheriff's department in 1997, 1998, and in 1999. Defendant's 1999 renewal occurred on January 14, 1999. At that time, defendant reported his residence address as 2N565 N. Euclid Avenue in Glen Ellyn.

On March 17, 2000, the State charged defendant in a two-count indictment with unlawful failure to register as a sex offender in violation of section 6 of the Act (730 ILCS 150/6 (West 2000)). Count I alleged that defendant failed to report in person to the sheriff's department within one year of his prior registration. Count II alleged that

defendant failed to notify the sheriff's department in writing within 10 days of changing his residence address.

At trial, David Lakim, a Du Page County deputy sheriff, testified that on January 3, 2000, he was on duty and was assigned to check the addresses of registered sex offenders in the county. Based on information in defendant's sexual offender file, Lakim went to 2N565 N. Euclid Avenue in Glen Ellyn to determine whether defendant was living at that address. Jessica Fontino, a girl in her late teens, answered the door and told Lakim that her family had recently moved there and that no one by the name of Willie Bell lived there. Lakim later gave this information to the detective division of the sheriff's department.

David Sand, a detective with the sheriff's department, testified that his duties included taking the registrations and the renewal registrations of sex offenders in Du Page County. Sand was also in charge of maintaining the files of sex offenders registered in the county. On January 12, 2000, Sand received information from a sheriff's deputy indicating that defendant may have changed his address. Sand consulted the sex-offender files and determined that defendant's last known address was 2N565 N. Euclid Avenue in Glen Ellyn. Sand testified that the registration records also showed that between January 14, 1999, and January 12, 2000, defendant had not contacted the sheriff's department and that no written notice had been received from defendant indicating a change of address.

Sand subsequently spoke on the telephone with residents of 2N565 N. Euclid Avenue in Glen Ellyn. The residents told Sand that they had moved to that address on September 1, 1999. Sand then contacted the Glen Ellyn post office and was informed that defendant had not left a forwarding address with the post office. Sand also contacted Susan DiLoardo, the realtor who had sold the property at 2N565 N. Euclid Avenue, to determine whether she had any information regarding defendant's whereabouts.

When Sand arrived at work on January 31, 2000, there was a telephone message waiting for him. The caller identified himself as "Mr. Bell" and stated that he was not due to register until March and would be registering in Waukegan where he was planning to move.

Sand further testified regarding the sex-offender registration form that was completed when defendant renewed his registration as a sex offender on January 14, 1999. The form included a number of printed requirements and directions indicating that the requirements must be read to the registrant and that the registrant must initial each requirement. Above the registrant's signature on the form there is a statement that provides: "I have read and/or had read to me, the above

requirements. It has been explained to me and I understand my duty to register and that failure to do so is a criminal offense." Sand testified that the form that defendant signed on January 14, 1999, showed the initials "WB" next to a requirement that stated: "You must, within 10 days of changing your residence address, notify in writing the law enforcement agency with whom you last registered, of your new address."

On cross-examination, Sand acknowledged that March 2000 would be exactly four years after defendant's release from prison and that the phone call from defendant was apparently on defendant's own initiative. Sand testified that he had assumed his duties of overseeing the county's sex-offender registration files and registering sex offenders a little before the middle of 1999.

Susan DiLoardo testified that she was a real estate sales representative who brokered the August 30, 1999, sale of the house located at 2N565 N. Euclid Avenue in Glen Ellyn. Prior to the sale of the house, DiLoardo had been acquainted with the owner, Mary Jane Andrlike, and was also aware that Andrlike had a boarder who lived in the basement of the house. DiLoardo identified defendant as Andrlike's boarder. DiLoardo recalled that after the closing on August 30, 1999, she returned to the house with Andrlike. Defendant was present. The house was empty. Andrlike and defendant then left.

On April 13, 2000, the trial court found defendant not guilty of count I and guilty of count II. The trial court sentenced defendant to three years' incarceration. Defendant's notice of appeal followed.

On February 7, 2001, this court allowed defendant's motion to remand the cause to the circuit court for a hearing and a ruling on defendant's motion to reconsider sentence. This court also dismissed defendant's appeal as premature. On remand, the circuit court denied defendant's motion to reconsider sentence. Defendant then filed a timely notice of appeal giving rise to this appeal. The only subject of this appeal is the trial court's finding of guilt as to count II, which alleged that defendant failed to notify the sheriff's department in writing within 10 days of changing his residence address.

On appeal, defendant first contends that his conviction should be reversed because he was erroneously classified as a sex offender and therefore was never required to register as a sex offender under the Act. Defendant acknowledges that he was convicted of rape in 1981 and recognizes that his 1981 rape conviction is the predicate offense that, in the State's view, requires him to register as a sex offender under the Act. However, defendant maintains that the State's view is erroneous. Defendant argues that the plain language of the Act shows that rape should not be construed as a "sex offense" that requires registration as a sex offender under the Act.

■ The Act requires any person that it defines as a "sex offender" to register as a sex offender with a local law enforcement agency. Such a person must register as a sex offender under various circumstances, including the person's discharge, parole, or release from prison any time after January 1, 1996. 730 ILCS 150/3(c)(4) (West 2000). Therefore, in view of defendant's release from prison on March 11, 1996, if the Act defines defendant as a sex offender, then he was required to register as a sex offender under the Act.

The portion of the Act relevant to the facts of this case defines a "sex offender" as any person who has been convicted of a "sex offense" as set forth in section 2(B)(1) of the Act. 730 ILCS 150/2(A)(1)(a) (West 2000). Section 2(B)(1) lists a number of specific offenses that are defined as sex offenses. The list includes criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse and aggravated criminal sexual abuse. 730 ILCS 150/2(B)(1) (West 2000). Section 2(B)(1) does not include rape among the listed offenses. Thus, defendant correctly asserts that the Act does not expressly list rape as one of the offenses that it defines as a sex offense.

However, the Act has a savings clause that also defines a sex offense. The savings clause defines as a sex offense "[a] violation of any former law of this State substantially equivalent to any offense listed in subsection (B)(1) of this Section." 730 ILCS 150/2(B)(2) (West 2000). Defendant acknowledges that, if the savings clause is deemed to define rape as a sex offense, then he would be a sex offender required to register as such under the Act. Not surprisingly, defendant argues that the savings clause should not be deemed to define rape as a sex offense.

In support of his position, defendant relies heavily on the First District Appellate Court case of *In re Detention of Lieberman*, 319 Ill. App. 3d 1020 (2001). In *Lieberman*, the respondent was convicted in 1980 of a series of rapes. In January 2000, prior to the respondent's entry into mandatory supervised release, the State petitioned to have the respondent committed as a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Commitment Act) (725 ILCS 207/1 *et seq.* (West 1998)). After the circuit court denied the respondent's motion to dismiss the petition, the respondent was granted leave to file an interlocutory appeal. The certified question on appeal was whether the respondent's conviction of rape was a conviction of a sexually violent offense under the Commitment Act. *Lieberman*, 319 Ill. App. 3d at 1021.

The appellate court noted that, under the Commitment Act, the commission of a "sexually violent offense" was a prerequisite for a

finding that a person was a sexually violent person. At the time the State filed its petition in *Lieberman*, the Commitment Act's definition of a "sexually violent offense" included criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, and aggravated criminal sexual abuse, but did not include rape. *Lieberman*, 319 Ill. App. 3d at 1023-24. The appellate court concluded that, by omitting rape from the list of specific offenses that the Commitment Act defined as sexually violent offenses, the legislature expressed an intent to limit the definition to the listed offenses. The appellate court also considered and rejected various arguments propounded by the State, including arguments that rape should be deemed a sexually violent offense because the listed offenses were a continuation of or were substantially similar to the offense of rape. The appellate court therefore answered the certified question in the negative.

Without more, *Lieberman* would be strong authority in support of defendant's position in this case. However, our supreme court has recently reversed the appellate court decision. *In re Detention of Lieberman*, 201 Ill. 2d 300 (2002). In its opinion, the supreme court agreed with the State's contention that the legislature intended that the offenses of criminal sexual assault and aggravated criminal sexual assault subsume the offense of rape. In reaching that conclusion, the court examined the legislative history of the act that repealed the offense of rape and created the offenses of criminal sexual assault and aggravated criminal sexual assault (Pub. Act 83—1067, eff. July 1, 1984). The court also compared the elements of the former offense of rape with the elements of the offenses of criminal and aggravated criminal sexual assault. *Lieberman*, 201 Ill. 2d at 313-17.

After finding that the offenses of criminal sexual assault and aggravated criminal sexual assault subsumed the former offense of rape, the court stated:

> "We conclude that because *** the Commitment Act defines the offenses of criminal and aggravated criminal sexual assault as '[s]exually violent offense[s],' and because the former offense of rape is subsumed into criminal and aggravated criminal sexual assault, it follows that a conviction for the crime of rape constitutes a 'sexually violent offense' under the applicable version of the Commitment Act." *Lieberman*, 201 Ill. 2d at 317-18.

■ We believe that similar reasoning applies in this case. Here, as with the Commitment Act's definition of a sexually violent offense, the Registration Act's definition of a "sex offense" expressly includes the offenses of criminal and aggravated criminal sexual assault. Because the former offense of rape has been subsumed into the of-

fenses of criminal and aggravated criminal sexual assault, it follows that a conviction of rape constitutes a "sex offense" under the Registration Act.

This conclusion is buttressed by the Registration Act's savings clause. After comparing the elements of rape with the elements of criminal and aggravated criminal sexual assault, the supreme court concluded that the legislature intended that the elements of rape be subsumed into the new offenses of criminal and aggravated criminal sexual assault. *Lieberman*, 201 Ill. 2d at 317. Based on this conclusion, we believe that rape should be considered to be substantially equivalent to the offenses of criminal and aggravated criminal sexual assault. This brings rape within the scope of the Act's savings clause (730 ILCS 150/2(B)(2) (West 2000)).

■ For these reasons, we conclude that the Act defines rape as a "sex offense." Because defendant was convicted of rape, he was therefore properly classified as a "sex offender" and was required to register as such under the Act. Accordingly, defendant is not entitled to the reversal of his conviction on the ground that the Act did not require him to register as a sex offender.

Defendant next contends that he is entitled to the reversal of his conviction because the State failed to prove him guilty beyond a reasonable doubt. Based on his analysis of the elements of the offense as charged in count II, defendant asserts that the State was required to prove beyond a reasonable doubt (1) that he moved and (2) that he failed to notify the sheriff's department within 10 days that he had moved. Defendant concedes that the State presented sufficient evidence to show that he moved on August 30, 1999. However, defendant argues that the State's evidence was not sufficient to show that he failed to notify the sheriff's department, within 10 days of the move, that he had moved.

■ When a defendant challenges the sufficiency of the evidence in a criminal case, it is not the function of a reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. The trier of fact has the responsibility to determine the credibility of the witnesses, to resolve conflicts or inconsistencies in their testimony, to assess the weight to be given to their testimony, and to draw reasonable inferences from all of the evidence. See *People v. Heard*, 187 Ill. 2d 36, 84 (1999); *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). A reviewing court should not reverse a criminal conviction unless the evidence is so unreasonable,

improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. McDonald*, 168 Ill. 2d 420, 444 (1995).

■ Here, defendant was charged with violating the registration requirements of the Act by failing to notify the sheriff's department in writing within 10 days of changing his residence address. Section 6 of the Act requires such notification by providing, in relevant part:

> "If any person required to register under this Article changes his or her residence address \*\*\* he or she shall, in writing, within 10 days inform the law enforcement agency with whom he or she last registered \*\*\*." 730 ILCS 150/6 (West 2000).

Thus, an element of the charged offense that the State was required to prove beyond a reasonable doubt was that defendant failed to notify the sheriff's department, in writing, within 10 days of his change of residence.

■ After carefully reviewing the record, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that defendant failed to notify the sheriff's department in writing or in any other way within 10 days of his change of his residence address. Officer Sand, the officer in charge of the sex-offender registration records, testified that the records showed that the sheriff's department never received a written notice from defendant regarding a change of his residence address and that defendant made no contacts of any kind with the sheriff's department in the period from January 14, 1999, through January 12, 2000. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have inferred that defendant failed to notify the sheriff's department in writing within 10 days of the change of his residence address. That was enough to prove the element in question in count II beyond a reasonable doubt.

Based on the foregoing, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and CALLUM, JJ., concur.